Tilghman, C. J.,
after recapitulating the facts, delivered, the opinion of the Court, as follows :
The counsel for the defendant, who have moved for a new trial, make three objections to the charge of - the Court. 1. That the evidence was not sufficient to justify the jury in finding the defendant guilty of a wrongful conversion. 2d. That Ambrose Laussatt had a right to consign the goods to •the defendant, although no agreement to that purpose was made: and 3d. That the standard of damages ought to have been the price for which the goods were actually sold, and not the value at the time of the plaintiffs’ demand ; and moreover, that damages in the nature of interest ought not to have been given.
Whatever property F. Jacoby had in these goods passed to *305 ihe plaintiffs by his deed of assignment, and if the perfect property passed, the right of possession passed with it. I am taking for granted, at present, that there was no agreement for the consignment of the goods to the defendant, and that without such an agreement, Ambrose Laussatt had no right to make the consignment. Then, as to a demand and refusal, they were both positively proved by the 951th of Mr. Delhi, and I consider the law as very, clear that, in general, a demand and refusal being proved, the jury ought to infer a conversion. There are, indeed, exceptions to this general rule, some of which appear in the cases which were cited on the part of the defendant. If one is in possession of goods which he has found and does not claim, and a demand being made by the owner, the possessor answers that he is not satisfied of that person’s being the owner, but he is ready to deliver the goods on receiving reasonable proof of ownership, this is not such a denial as will warrant the inference of conversion. On the contrary, it is such an answer as a prudent man, consulting the interest of the true owner, ought to give. So if one who calls himself the agent of the owner, demands the goods, and the possessor answers that he'cannot deliver them until he receives proof that he is really the agent, no conversion can be inferred, because the answer shews nothing like an intent to convert, but only a design to preserve the goods for the use of the owner. But, in the present case, the defendant refused to deliver the goods because he claimed them as his own, or, at least, he claimed a special property, adverse to the general property of the plaintiffs. It appears to me, that such a refusal falls within the general rule, and is sufficient evidence of a conversion.
2. In this case the oaths of Ambrose Laussatt and F. Jacoby were in direct opposition ; and if Ambrose Laussatt did not swear the truth, there must have been collusion between him and his uncle, the defendant, to throw the goods of F. Jacoby into the hands of the defendant in order to secure the debt due to him from Jacoby. Now, without entering into the abstract question, how far a consignee of goods has a right to consign .the proceeds to any other person than the owner, where he has received no express order on the subject, it is extremely clear that he cannot make a fraudulent consignment for the purpose of altering the property^ and that a party to such fraud shall not be permitted to take *306 any benefit from it. Such a question cannot bear a moments consideration, and that is the very question presented in this case ; because, if the agreement set up by the defendant was really made, no doubt the consignment to him was legal, and so t|lt, jury were directed ; but if the agreement was not made, there was a fraud in the consignment, to which the defendant was a party. I am, therefore, of opinion that, on this point, the charge was right.
3. As to the damages—If the goods had been delivered on the plaintiffs’ demand, they might have sold them at the current price at that time ; that price, then, is the damage, and not the price which the goods brought some time after, when the market had fallen. As to further damages in the nature of interest, I see nothing unreasonable in them. The plaintiffs-were kept out of their property, and put to the expenses ' of a suit. On this point, our practice has been more liberal than that of the English Courts. Whether interest was included in the verdict, I am not certain ; but, granting that it was, I would not on that account set it aside. With respect* to the charge of the Court then, I am of opinion that the defendant’s objections cannot be sustained. But two other exceptions were taken at the trial, which arose on points of evidence. 1. The admission of F. Jacoby as a witness, was objected to by the defendant on the ground of his being interested. The trusts of his deed of assignment were, in the first place, to pay certain specified debts, and then to pay the debts of all creditors who should execute releases within a limited time ; the surplus, if any, to be returned to the assignor himself. Evidence was given which induced the Court to believe that there would be no surplus. Whether, on such evidence, the witness was admissible, it is unnecessary to determine ; because, granting that he had an interest in the surplus, that interest was balanced by a contrary interest, so that his interest was equal, whether the verdict was for plaintiffs or defendant. If the verdict should be for the plaintiffs, the fund in their hands would be increased, and, consequently, the surplus to come to the witness might be increased. On the contrary, if the verdict should be for the defendant, the money in his hands would be applied to the discharge of a debt for which the witness was responsible, for the defendant had no,t given him á release. His interest, therefore, was equal either way, and consequently he *307 Was competent. 2. The defendant offered in evidence his letter of instructions to Ambrose Laussatt, when the ship Eagle, in which the defendant was a shipper, sailed from Philadelphia ; but the evidence was rejected by the Court. In this letter, the defendant, after giving instructions concerning the goods shipped by himself, speaks to his nephew as follows: u Do not forget that Mr. F. Jacoby has agreed that you should address me the returns of his adventure, giving them to me as a guarantee fof“the payment of the notes he is to give me for the amount of the coffee I sold him, which he has consigned to you.”
A better ^.expressed memorandum, to prove the point in issue between these parties, to be sure, could not have been penned. But was it evidence ? I cannot think that it was. It is true the plaintiffs had given in evidence, without objection, the letter of instructions from F. Jacoby to Ambrose Laussatt; but that was a very different matter. That letter proved the instructions given by F. Jacoby to his consignee, touching his own goods. And how else, could the instructions be proved ? It was written in the usual course of business, and formed the basis of the consignee’s power. It is necessary that such letters should be written, for without them the consignee would not know howto act. If any dispute had arisen concerning the power given by the defendant to his consignee, touching his own goods shipped in the Eagle, his letter would have been good evidence. But it was offered for no such purpose, but to prove that the defendant had a special property in the goods of another person. In that point of view, it is not a letter of instructions, but a paragraph "thrown into a letter of instructions to answer the writer’s purposes in a matter not concerning the goods shipped by him. If such evidence were admissible, it might have dangerous consequences. I know, that great latitude has been necessarily allowed in the admission of evidence in commercial causes ; but I think it has-~not, and ought not to be carried so far as was asked in this case, and, therefore, the evidence was properly rejected. On the whole, then, my opinion is against a new trial.
New trial refused,