HOLBROOK and others *vs.* WRIGHT.

Where a party consigns goods to another and sends him a letter of advice, and immediately after draws upon the consignee for funds, who accepts the drafts, a jury are warranted in finding a contract and that the title to the goods has vested in the consignee, although there be no *express* agreement to that effect.

Where on the trial of a cause certain facts are assumed to exist, without the proof of which the action could not have been maintained or defence sustained, the losing party on a motion for a *new trial* cannot insist upon the absence of such facts in a *case* made on which to move for a new trial.

A factor *del credere* who has made *advances* upon goods consigned to him for sale, and which have been delivered to a third person to forward, has a *lien* upon the goods, and may maintain an action against the bailee for non-delivery.

Where the partner of a *bailee* refuses to deliver goods to the owner, saying that *he does not feel authorized to deliver them up in the absence of his partner,* the bailee in an action against him cannot object that the demandant did not exhibit the evidence of his *title ;* if that was the true reason for the *non-delivery,* the partner should have said so, and if the refusal had been made *in good faith,* the defendant would have been protected.

New-York, May, 1840.—Holbrook v. Wight.

*A bailee* acknowledging by receipt to hold the goods for a third person, is in itself a *conversion*, and after having done so, and the agent having placed his refusal upon the absence of his principal, the bailee cannot claim to hold on the ground of lien for *storage* and *charges* paid. In an action of *replevin* in the *detinet*, the proof of *refusal* need not be as strong as in *trover*.

THIS was an action of *replevin*, tried at the New-York circuit in November, 1838, before the Hon. OGDEN EDWARDS, one of the circuit judges.

*The plaintiffs declared in the *detinet* for 14 boxes of sattinets,  [ *170 ] containing 8136 yards of that article. The plaintiffs, commission merchants in *New-York*, received from a manufacturing establishment in *Middlebury*, (*Vermont*,) conducted by *M. Ticknor & Co.*, an *invoice* of upwards of 4491 yards of sattinets accompanied by a letter in these words : " Middlebury, Dec'r 24th, 1836, *consigned to Holbrook, Nelson & Co.*— Gent. The above are all put up, ready to send to Troy as soon as the going is suitable, which at present is very bad ; they will be forwarded as soon as may be and insured ;" and subsequently another invoice of 3645 yards, also accompanied with a letter in these words : " *Consigned to Holbrook, Nelson & Co.* Middlebury, Jan'y 20, 1837. Above, you have the balance of *satts* belonging to us ; 11 cases have been sent to *White, Baker & Morrell*, (*Troy.*) We have 3 on hand, which we intend to send in the course of 10 days. We have directed them to insure $3000 on them." On the 24th December, 1836, M. Ticknor & Co. drew upon the plaintiffs for $2000 at three months ; and on the 14th January, 1837, for another $2000 at three months ; and on the 28th January, 1837, for another $2000 at three months—which drafts were accepted by the plaintiffs. The plaintiffs previous to this time had been the agents of M. Ticknor & Co. in selling their goods, and on the 1st November, 1836, M. Ticknor & Co. were indebted to them upwards of $3000. In the winter of 1836 and 1837, *White, Baker & Morrell* received for storage from M. Ticknor & Co. 14 cases of sattinets, marked " H. N. & Co., 53 Pine-street, New-York," (the names of the plaintiffs are Lowell Holbrook, Thomas S. Nelson, and William E. Shepard, conducting business under the name of Holbrook, Nelson & Co.) *subject to future orders*, and with directions to obtain insurance to the amount $3000. On the 10th February, 1837, *White, Baker & Morrell sent* to the store of *Daniel Wight*, the defendant in this cause, twelve of the boxes of sattinets, in pursuance of an order from M. Ticknor & Co., in these words : " *Bennington*, Feb'y 4, 1837. Messrs. White, Baker & Morrell—Please deliver to Daniel Wight all the Boxes sattinets in store, as I have *agreed with him to forward them to N. York ;" which were re-  [ *171 ] ceived by *George W. Wight*, a partner of *Daniel Wight*, who gave a receipt for them, dated 10th February, 1837, signed, " D. Wight by Geo. W. Wight." White, Baker & Morrell received from D. Wight their charges for storage and money advanced for insurance. In May, 1837, *Nel-*

*son*, one of the plaintiffs in this cause, went to the place of business of D. Wight, where he found *George W. Wight*, (D. Wight not being in,) and demanded the sattinets in question, saying they had been assigned to him and his partners by M. Ticknor & Co., to which George W. Wight answered, that *he did not feel authorized to deliver up any goods in the absence of Daniel Wight*. Whereupon the goods were replevied by the plaintiffs and taken away. After the goods were replevied, D. Wight acknowledged that his instructions were to send the goods to the plaintiffs in New-York, and that he did not send them, because they had been assigned by M. Ticknor & Co. to *Elnathan B. Goddard*, and he had received notice of that assignment.

It appeared in evidence that the firm of M. Ticknor & Co. consisted of *Myron Ticknor* and *Stephen Hinsdill ;* Ticknor residing at *Middlebury*, and carrying on the *manufacturing* business at that place, and *Hinsdill* at *Bennington*, at a distance of 90 miles from Middlebury, conducting the *financial* part of the business. The invoices were in the hand-writing of *Ticknor*, and the drafts upon the plaintiffs and the order to White, Baker & Morrell being in the hand-writing of *Hinsdill*. On the part of the defendant, it appeared that on the 9th February, 1837, *Ticknor*, to secure *Elnathan B. Goddard*, as an endorser for the firm of M. Ticknor & Co., assigned to him the fourteen boxes of satinetts then in the hands of White, Baker & Morrell, and gave orders to the latter firm to deliver the goods to Goddard. *George W. Wight*, on the 20th February, 1837, gave a receipt in these words : " Recd. in store *twelve* cases of sattinets from M. Ticknor & Co., *subject to the order of E. B. Goddard* of Middlebury, Vt." and signed thereto the name of the firm of " D. Wight & Co." of which firm he was a member ; and [ *172 ] on the 27th of the same month, *D. Wight* himself gave a similar receipt for *two* boxes of sattinets. *Myron Ticknor* testified that he sent to the plaintiffs the invoices produced on the trial, and at that time intended to send the goods to them ; that a note of the firm endorsed by *Goddard* having been protested, he assigned the sattinets as security to Goddard, not knowing at the time that *Hinsdill* had drawn the drafts produced on the trial, and believing that the plaintiffs had a sufficiency of goods in their hands belonging to his firm to pay and satisfy them for any sum they might be in advance for the firm. He further testified, that there was no bargain or understanding between him and the plaintiffs that the title to the goods should vest in the plaintiffs ; that he directed the goods to be insured as the property of his firm.

The judge charged the jury, that the evidence was sufficient to warrant them in finding that the goods were received by the defendant to be delivered to the plaintiffs ; that a sufficient *demand* had been made before suit brought ; that the defendant not having claimed a *lien* for storage or charges at the time of the demand, could not now set it up in bar of the action ; that if, from

the testimony, they should come to the conclusion that there was a contract between the parties that the property should be forwarded to the plaintiffs by M. Ticknor & Co., and that the plaintiffs on accepting the drafts should be satisfied out of the proceeds of the property, the plaintiffs had a right to the property, and the consignors could not divest them of such right; but if, on the contrary, they should come to the conclusion that there was not such a contract, and that the acceptances were on the general credit of the consignors, then the latter had the right to change the destination of the property, and the jury would in that case find for the defendant. To which charge the defendant excepted. The jury assessed the value of the goods at $3675, and found a verdict for the plaintiffs, with six cents damages and six cents costs. The defendant moves for a new trial.

*S. Stevens*, for the defendant.

*M. T. Reynolds*, for the plaintiffs.

*By the Court*, COWEN, J. It is barely necessary to state this [ *173 ] case, in order to see that the question whether there was a consignment for a valuable consideration to the plaintiffs, was properly left to the jury; and that they have rightly disposed of it. True, Ticknor testifies that there was no agreement by which the title was to pass; but this is by no means conclusive. He could speak only to an express or direct agreement; and so far he doubtless spoke correctly. It was for the jury to look at his own and the other evidence in the case, and collect the language of circumstances. The mere course of business between M. Ticknor & Co. and the plaintiffs for a considerable time previous to the consignments in question would have warranted them in saying that there was an intention to vest the title in the plaintiffs. That course was, for the plaintiffs to consign goods from time to time, and draw against them in the plaintiff's hands. After that the goods in question are consigned, receipted by the defendant at Troy to hold for the plaintiffs during winter, and put them in a way of transportation to New York at the opening of navigation in the spring. About the same time, as if to draw against these very goods, come the bills of exchange for $6000. Comparing the dates of invoices, consignments and drafts, they must have appeared to the plaintiffs as specially designed to make parts of the same transaction. *Vide Vertue v. Jewell*, 4 *Campb.* 31; *Haile v. Smith*, 1 *Bos. & Pull.* 563. Add to this the obvious position in which the defendant stood, holding, as the jury had a clear ground for saying, in the very right of the plaintiffs, with full knowledge that the goods were directed to them; and the idea of disturbing the verdict as against the weight of evidence is altogether inadmissible. The short inference is, that there was an agreement to consign these goods so as to raise a fund in the plaintiff's hands,

on which the consignors might draw immediately. No matter whether the goods remained at Troy or had passed on to New-York. It was enough that the general property thus passed to the plaintiffs. The right of possession followed. So far as title is concerned, therefore, the action was [ *174 ] well sustained at the circuit ; for *in the view I have taken, all pretence of right in Goddard is extinguished. The assignment to him was some weeks posterior to that under which the plaintiffs acquired title. The cases cited by the defendant's counsel, so far as they go to the question of title, have no application. *Ruck* v. *Hatfield*, 5 *Barn. & Ald.* 632. *Craven* v. *Rider*, 6 *Taunt.* 433. *Thompson* v. *Trail*, 2 *Carr. & Payne*, 334. They were all cases where the plaintiffs, the vendors, kept possession of the lighterman's receipt for the goods consigned, the vessel by which they were to be transported yet lying in the port of departure, the effect of which was that the masters, the defendants, held the goods for the vendors, and subject to their control. Yet without waiting for a surrender of such receipts, the masters signed bills of lading to the consignees. The latter failing to pay, the plaintiffs claimed a right to stop the goods *in transitu ;* and it was held they might. Signing bills of lading was held to be a conversion. But in the case at bar, the plaintiffs had not failed to pay ; they had accepted bills and were able to pay ; and the defendants, so far from holding for the vendors or consignors, held, according to the finding of the jury, for the consignees, the plaintiffs. *Patten* v. *Thompson*, 5 *Maule & Selw.* 349, therefore, has no application.

It is said there is no evidence in the case that the plaintiffs had either accepted or paid the drafts. There is not indeed any direct evidence ; but the fact of acceptance was assumed throughout the trial. The judge referred to it in his charge to the jury. It is strange, if such a material fact were out of the case, that it was not mentioned as an objection and made a point.

I have so far considered the consignment as in nature of a sale. But take it that the absolute property did not pass ; that there was not evidence enough to warrant the jury in saying that it did ; this answers only one view of the case. If the plaintiffs were not absolute purchasers, still they were factors or commission merchants *del credere*, who were in advance or under acceptance on the credit of the sattinets to their full value. Then the goods are to be taken as delivered to the defendant to hold for the plain- [ *175 ] tiffs in that *character. This comes to the same thing so far as their right of action is concerned. The plaintiffs had a *lien* with possession in themselves ; for the defendant's possession was theirs. The contract was not merely *executory* like that in the case cited by the counsel for the defendant. *Nichols* v. *Clent*, 3 *Price*, 547. It is true of that case, that the factor *del credere* had accepted bills against the goods, which were indeed designed for him, and were put on the way to him. But they did

not come to his hands or the hands of his agent until after the consignor had committed an act of bankruptcy. The case goes entirely on the ground that the contract of sale was still unexecuted ; that the vendor himself had a right to stop the goods and substitute others to meet the consignees' acceptances. I shall only refer to the reasoning of Baron Graham who delivered the opinion of the court, *p.* 567, 570, &c., with the general declaration that, on his own principles, had the goods been delivered as the jury found they were here, he could have made no doubt that the right of the consignees for the amount of their acceptances would have become perfectly executed. He very ably reviews the previous cases, and among others *Kinlock* v. *Craig*, 3 *T. R.* 119, putting them on the correct ground. The plaintiffs, then, according to the finding of the jury, either had title as vendees or a lien as factors *del credere* for their advances, which is the same thing in effect, for the purposes of this action. I shall, therefore, consider them the same as vendees, for the purposes of all the other questions in the cause.

Several grounds of a technical character have been taken by the defendant in the course of the cause which it becomes necessary to consider.

The supposed variance between the declaration as stating a delivery to the defendant alone, and the proof as showing a delivery to him and his partner, which was objected at the circuit, is now abandoned.

But Nelson, the plaintiff, it is said showed no authority to demand the goods. The defendant's partner did not take the ground that Nelson had no title, and desire time to examine. *Had he done [ *176 ] so, in good faith, and Nelson had refused all explanation, there might have been plausibility in objecting that he disclosed no right. Doubtless all the defendant could desire to know was, whether Nelson belonged to the N. Y. firm, for whom he had received the boxes. Probably not so much ; for, according to the subsequent explanation given by the defendant, he had taken his ground in favor of Goddard, who had most likely indemnified him. If not, it was the defendant's business to see to that. To constitute a conversion, it is said the refusal to deliver must be positive and absolute, not merely evasive. 2 *Saund. Pl. and Ev.* 478, 479, *Am. ed.* 1829. The remark is there illustrated by the case of *Severin* v. *Keppell*, 4 *Esp. R.* 156. This was trover against a silversmith, for plate delivered to him, for the purpose of having it repaired ; and the plate being repeatedly demanded, he finally, after several excuses for not delivering, and obtaining time, sent home a part, and on a demand being made for the residue, refused, saying he had already sent it home. This he knew to be false. Yet the plaintiff was nonsuited, Lord Ellenborough saying that where a man takes goods under a contract to deliver, the *bare non-delivery* is not to be considered as itself amounting to a tortious conversion. It is true, that a reasonable ex-

cuse, made in *good faith*, ought not to be held a conversion. *Isaack* v. *Clark*, 2 *Bulstr.* 312, 313. Chief Justice Coke there laid down the law as it stands at this day. A finder or bailee of goods is not to be entrapped. If the finder excuse himself, as wanting time to ascertain the true owner, and, as Coke says, lay goods up and keep them *for that cause*, and *for the true owner*, to be delivered whenever the finder can reasonably satisfy himself of the man, this is no evidence of a conversion. So where the defendant found timber on his premises, which had, under permission of a former occupier, been deposited there by the plaintiff, and on his demanding it, the defendant told him he should have it, if he would bring any one to prove his property. *Green* v. *Dunn*, 3 *Campb.* 215, *note.* So where the defendant, a servant, had charge of a warehouse in which goods had [ *177 ] been deposited, and on their being demanded *of him, said he could not deliver them without an order from his masters. *Alexander* v. *Southey*, 5 *Barn. & Ald.* 247. Best, J. said, in the latter case, an unqualified refusal is almost always conclusive evidence of a conversion ; but if there be a qualification annexed to it, then the question is, whether it be a reasonable one. Bayley, J. said, if the plaintiff had informed the defendant that application had been made to his masters, and they had refused, or that he expected the defendant to go and get an order, and after that he had refused, he thought that would have amounted to a conversion ; but here he would not have done his duty, if he had delivered the goods without an application to his employers. Holroyd, J. compared it to calling on a servant at a gentleman's house, for goods, and the servant delaying for orders. He cited *Mires* v. *Solebay*, 2 *Mod.* 242, as in point. So, if the demand be not made by the owner, and the refusal be put on the ground of not knowing the owner ; and therefore the goods be kept till he can be ascertained, or if the defendant objects a want of power to make the demand, and desire a delay till he can be satisfied on this head. *Solomons* v. *Dawes*, 1 *Esp. R.* 83, and *vide Coore* v. *Callaway*, *id.* 115. So of any reasonable excuse made in good faith at the time, the goods being evidently kept with a view to deliver them to the true owner. It is, then, the business of the plaintiff to obviate the objections, as far as may be reasonably required. The course a defendant should pursue under this, or the like circumstances, is well considered by several American cases. *Jacoby* v. *Laussatt*, 6 *Serg. & Rawle*, 300, 305. *Watt* v. *Potter*, 2 *Mason*, 77, 81. *Ratcliff* v. *Vance*, 2 *Rep. Const. Ct. S. C.* 239, 242, 243. In the case at bar, the refusal was not by a servant, but by the defendant's partner. It is the same as if demand had been made of the defendant personally, and he had said " no ; I must have time," without saying why ; concealing the fact that Goddard had interposed a claim, and that he had given a receipt to hold for him. We do not agree that the refusal of the silversmith on the fraudulent ground

stated in *Severin* v. *Keppell*, was such an evasion as the law allows. It was not a *bare non-delivery* 'which we concede is not evidence of a conversion where the goods came lawfully into the [ *178 ] hands of the defendant. Nor can we accede that it was a *reasonable* evasion *in good faith*, which all the cases require, from Bulstrode to Barnewall & Alderson. Refusal upon a ground false or deceptive is equivalent to a general refusal, which, as Best, J. said, is, in general, conclusive evidence of a conversion. Had D. Wight & Co. the defendant's firm, kept the question of Goddard's title open, and George Wight had desired time to be satisfied whether the plaintiffs had a prior title, doubtless an explanation of that matter would have been given. But the firm had actually signed a receipt acknowledging to hold for Goddard. This was in itself a conversion. *Craven* v. *Ryder*, 6 *Taunt.* 433. *Ruck* v. *Hatfield*, 5 *Barn. & Ald.* 632. *Thompson* v. *Trail*, 2 *Carr. & Payne*, 334 ; 6 *Barn. & Cress.* 36, *S. C.* George was a party to the receipt. That he concealed ; the lien for storage and premiums was concealed ; and a claim interposed for time to consult, without calling Nelson's attention to any possible difficulty in the matter.

One word farther as to the objection taken on the argument, that a refusal by George Wight would not be evidence of a conversion by the defendant. That was on the assumption that George was a mere clerk. In fact, as I have said, he was a partner ; and, without conceding that a refusal by a clerk would not be evidence, it is enough to say, that on the clearest principle, and on direct authority, where goods are received by partners, a demand of and refusal by one, equally affects the other. *Nisbet* v. *Patton*, 4 *Rawle*, 120, *and the cases there cited.*

Although this is an action of replevin in the detinet, we have chosen to follow the counsel on the argument, and treat it as an action of trover. We have therefore looked to see whether enough was proved to establish a conversion. In this sort of action, however, which merely goes for a wrongful detention, 2 *R. S.* 430, 2*d ed.* § 1, *id.* 435, § 36, the ground of action may not always be precisely the same, as if trover had been brought. It seems to bear a nearer resemblance to detinue, where the requisite evidence may not *in every case be so strong as would be necessary [ *179 ] to make out a conversion. All three of the actions, however, no doubt depend on very nearly the same evidence, both for the prosecution and defence, where the receipt of the goods was originally lawful. The ancient distinction taken by Coke, 2 *Bulstr.* 313, that refusal may be a ground for detinue, where it will not maintain trover, is very nearly if not quite exploded by the modern authorities.

It seems to me, that the ground on which the defendant, by his partner, confessedly held on the goods, puts the question of lien out of the case. The defendant had forfeited all claim to the lien by tampering with the title. He

had notice of Goddard's claim ; and if I may so say, attorned to him.   It is like the case of one selling or pledging the goods. 2 *Wheat. Selw.* 1408. to 1412. *and cases there cited, ed. of* 1839.   *Scott* v. *Newington*, 1 *Mood. & Rob.* 252.   Either operates as a forfeiture of his lien, if the act be not in itself a conversion.   Taking the evidence and the course of the defence together, there could he no doubt that the defendant had completely identified himself with Goddard, and held and defended on this title alone.   A tenant who has attorned to another loses his right as tenant, and cannot afterwards claim to defend for want of a notice to quit.   The rule seems to be much the same in respect to the lien holder.   He must not do any positive act hostile to the claim of the owner.   2 *Wheat. Selw.* 1408, *ed. of* 1839.

Again, the sale or pledging of goods by a bailee is in itself a conversion. No demand would be necessary in trover, nor do I believe it would in replevin, although the declaration must, by § 36 of the statute, aver a request in all cases of wrongful detainer.   A request is considered as made by bringing an action where there is a precedent duty to deliver. Is not the co-operating with a third person, receipting from and holding for him, equivalent to a pledging of the goods ? The case at bar, whether the defendant's acts in conjunction with Goddard be looked at, either in reference to the question of waiving the lien or a positive conversion, will be found to have been decided in principle, and almost in circumstance, by *Thompson* v. *Trail*, [ *180 ]    2 *Carr. & *Payne*, 155 ; 6 *Barn.* & *Cress.* 36, *S. C.   Vid. also Ruck* v. *Hatfield*, 5 *Barn. & Ald.* 632 ; and *Craven* v. *Rider*, 6 *Taunt.* 433.   These cases all decide that where a bailee holding goods for the vendors, signs a bill of lading in favor of the vendees, this act is itself a conversion.   The principle is directly applicable.   Here the defendant holding the goods for the plaintiffs gives a receipt acknowledging to hold them for Goddard, who had no title.   But if this were not so, and supposing the question of lien to rest on what the defendant's partner said when the demand was made, omitting to mention a lien and taking other ground, waives it.   Without denying Nelson's right, without a reasonable excuse for delay, and without any allusion to the lien, George Wight said the goods could not be delivered till the defendant was himself consulted.   Was not this, of itself, taking such ground independent of the lien as brings the case within *Boardman* v. *Sill*, 1 *Campb.* 410, *note*, which has been followed by this court ? *Everett* v. *Saltus*, 15 *Wendell*, 474.   These cases hold that if the defendant claim the goods as his own, he waives his lien.   The reason, as given in the first case, was, that the party answering claimed the goods on a ground distinct from the lien.   George Wight here, who stood in the same condition as the defendant, says the sattinets cannot be given up till the latter is consulted.   How was that at all consistent with the lien ? George knew of the lien, or must be taken to have known.   What need then of de-

laying and baffling ? Why not say at once, I must have the money ? *Board-man* v. *Sill* was reviewed and approved in *White* v. *Gainer*, 9 *Moore*, 41 ; 2 *Bing.* 23. *S. C.* There a dyer and miller, who had a lien, being applied to for the goods, answered that he might as well give up every transaction of his life. The court held that this was not taking ground distinct from the lien ; but was no more than a general refusal, which will not work a waiver. Indeed Best, C. J. thought the words rather intimated that the lien must be paid. But the case at bar cannot be called one of general refusal : that is where no specific reason whatever is given. Here it is distinctly be-cause the defendant was absent, a thing which was apparently unconnected with any *claim of, the lien. If it were otherwise, [ *181 ] the defendant's partner could easily have said so. It is impossi-ble, however, for two minds to differ on what was really meant. The whole pointed to the defence made at the trial, which set up a title adverse to that of the plaintiffs. George refers to the defendant as the man who must be consulted, and the first we hear of him is an avowal that he had been holding on for Goddard.

A new trial should be denied.