By the Court,

Cowen, J.
The plaintiff being the owner of the cows, bailed them to the defendants for one year at a stipulated compensation. The bailment was for the special benefit of Williams, with whom the cows were left, Roberts residing four or five miles distant from him. At the expiration of the year the cows were demanded by the plaintiff of Roberts at his residence. Roberts said he would have nothing to do with the matter. The single question is whether this was prima facie *15 evidence of a conversion by him. There was no dispute on the argument, that a conversion had been made out against Williams. No doubt is raised that assumpsit might have been brought against both, on the joint promise to re-deliver which is implied by law; (Story on Bailm. 89., § 116;) but it is denied that trover will lie against Roberts, except for an actual conversion by him, to be shown by at least an unqualified refusal to deliver.
It was held in Lockwood v. Bull & Eager, (1 Cowen, 322,) that the two actions of trover and assumpsit are not exactly concurrent: that is to say, mere neglect of one or both to deliver the property to the bailor will not necessarily furnish ground for an action of trover ; but in a case of bailees, though their contract be joint,yet, to sustain trover against them jointly, a wrongful conversion by both must be shown. The defendants were not in the case of partners, where each being the general agent of the other, a refusal by one is evidence of a conversion as to both. (Holbrook v. Wight, 24 Wend. 178.)
The sale of the cows on the judgments and executions was a mere sham. The proceeding was a nullity. The cows remained with Williams; and there was nothing in the case therefore which necessarily embarrassed either of the defendants in delivering them. If Roberts had been in the actual possession, and, to a demand, had made the same reply, “ I will have nothing to do with the cows,” or u with the matter,” such language might, per se, have been sufficient evidence of a conversion. (Smith v. Young, 1 Campb. 439.) But did he mean any thing more than that he would remain neutral in the controversy which he thought might perhaps arise out of the sale 1 The plaintiff had a right to take the cows from Williams and drive them away. Was there in Roberts’ act any thing beyond a nonfeasance l The goods came lawfully to his possession ; and to make his mere inaction decisive, evidence of a conversion—in other words, to make it a refusal—there should have been an intent *16 to embarrass the plaintiff in his steps to obtain possession. It is not to be denied that Roberts’ conduct was open to such a construction. He was the near relation of Williams, and his advice to give up the cows would probably have been decisive. If, by refusing to act, he intended to collude with, or countenance or aid Williams in depriving the plaintiff of his right, by means of the sham judgments and executions, that would amount to a positive refusal, and so furnish the usual evidence of a conversion. Indeed, if unexplained, it would be decisive evidence of a conversion •, for a refusal is considered such in practice. I will not deny that a judge may advise a jury, as matter of law, on a demand and refusal unexcused, to find a conversion. The refusal would be an exercise of a dominion over the property of the owner incompatible with his right. (Bristol v. Burt, 7 John. Rep. 254, 257.) But there must be a refusal ; something more, I think, than a naked withdrawal from all dispute, in good faith, and from a desire to avoid getting between two fires. In Lockwood v. Bull & Eager, Bull might, by going to James, who had got the property and held it adversely, have been instrumental in its restoration. But the peculiar condition of the' property, it being, in dispute, was held to be an adequate excuse.’ Under ordinary circumstances, the property being present or under the undisputed control of the defendant, a mere neglect to deliver, without saying a word, or a refusal to point out the property and act in the delivery, would be prima facie evidence of a conversion. As was said by Wood-worth, J. in Lockwood v. Bull & Eager, “ mere non-compliance with the demand, after a reasonable time has been afforded for a delivery, would be tantamount to a refusal, and presumptive evidence of a conversion, and throw upon the defendant the burthen of rebutting the presumption.” (1-Chit. Pl. 159, Am. ed. of 1840.) Non-compliance is a virtual refusal; (Durell v. Mosher, 8 John. Rep. 445 ;) but in the case at bar it was qualified, or at least might have been so by the circumstances. In Lockwood v. Bull & Eager, a majority of the court acting for the jury on a case, found for the defendant upon facts not stronger for *17 him, I think, than we have here for Roberts. The difficulty is, that here the judge told the jury in so many words to find for the plaintiff. Had he told them the reply of Roberts was equivocal, and left its meaning to them, and they had put the same construction upon it as he did, that would have been clearly right. (Harger v. M’Mains, 4 Watts, 418.) I am certainly with him in the suspicion that what Roberts said might have been mere affectation of a desire to avoid difficulty, and intended to countenance Williams and his family in holding over against the plaintiff; but strictly, I think the question should have been submitted to the jury. With the case of Lockwood v. Bull & Eager before us, I do not see that we can escape from saying so much. For that reason I think there should be a new trial.
New trial granted.