## TOWNSEND *a.* BOGART.

*New York Superior Court; General Term, February,* 1860.

### ARREST.—LIABILITY OF PARTNERS.

In an action in the nature of an action on the case against partners, for obtaining goods from plaintiffs by fraud, a partner who did not participate personally in the fraud, is liable to arrest as well as those who did.

If the affidavits show such a cause of action, it is not to be inferred that the complaint will not state a cause of action of that nature, because the affidavits allege that the action is brought to recover the price of goods sold.

In an action against partners, to recover a debt of the copartnership, in contracting which some of the partners were guilty of a fraud, all the partners are liable to arrest.* WOODRUFF and ROBERTSON, JJ., dissented.

What facts will raise a presumption that a partner was cognizant of, and assenting to fraud committed by his copartners.

Appeal from order made at special term, denying motion to vacate order of arrest.

This action was brought against the three defendants, Bogart, Jefferis & Jackson, to recover for goods obtained from the

---

* Compare Anonymous (6 *Ante,* 319, *note*); Hanover Co. *a.* Sheldon (9 *Ib.,* 240); Claflin *a.* Frank (8 *Ib.,* 412).

plaintiffs upon fraudulent representations. Plaintiffs obtained an order of arrest upon affidavits which alleged that the action was brought to recover the price of certain goods, describing them, sold and delivered by the plaintiffs to the defendants on a day and for a price specified, the price whereof became, by the terms of sale, payable thirty days from the time of sale, but that defendants had not paid any part of it; that defendants compose the firm of Bogart, Jefferis & Co., and have been heretofore, and now profess to be engaged in the auction business; that they occupied a spacious store on Broadway, and by conspicuous signs invited the confidence of the business community.

The affidavit then set forth that on July 2, 1859, defendant Jefferis came to plaintiffs' store and asked the price of Pennsylvania Knitting Company's shirts and drawers; that he represented that they had a customer who would buy three hundred dozen of such goods. The plaintiffs refused to sell goods to be sold by defendants at auction, and Jefferis assured them they did not wish them to sell at auction, but had a customer who stood ready to take them at a price named. Upon the faith of these representations plaintiffs sold the goods, and delivered them to defendants.

When the bill became due it was not paid, and on several successive occasions one of the plaintiffs called at defendants' place of business, and on each occasion Jefferis promised that they would make payment in a short time, but they did not do so. On one of these occasions Jefferis being asked whom the goods were sold to, said he could tell, but it would not do any good. He was responsible, but was not known. On further inquiry he acknowledged that he had sent the goods to Baltimore, to one Byerly. He said they were sold on credit, and he would try to get the buyer's note for plaintiffs. Upon this promise plaintiffs gave further forbearance.

This promise being broken, Jefferis subsequently promised to pay cash, and when one of the plaintiffs accordingly called at defendants' place of business, when he saw both Jefferis and Jackson, who both gave him to understand that they had been disappointed in remittances, and Jackson said that he would bring the money to the plaintiffs' store on a specified day, and if it was not paid by that time they would take means to collect,

adding that he would then explain why it was not paid before. On subsequent occasions Jackson assured them that the money was perfectly safe, and there was no need of suing. In answer to an inquiry whether the goods which he had said were sold to Byerly, of Baltimore, were disposed of, Jackson said he did not know whether they were sold outright or not, or whether they could be got back or not, as Jefferis had managed the matter pretty much; and he then called Jefferis in to answer. In answer to the inquiry whether plaintiffs could get the goods back, Jefferis shook his head without saying any thing, and in answer to the question whether they were sold to Byerly, he said they were partly sold and partly not. In answer to an inquiry as to defendants' solvency, he said they relied upon having every cent of their money. He said he could explain his transaction if he chose, but it would do no good. The affidavit also alleged, on information and belief, that the goods were not sold to Byerly.

The affidavits further stated a very similar transaction by the defendants with the house of Britton & Co. at about the same time, in which transaction Jefferis and Jackson were the actors.

On the plaintiffs' affidavits, the defendant Bogart moved to vacate the order of arrest as against himself.

The motion was denied at special term, and the defendant appealed.

*Wm. H. Scott*, for the appellant.—I. The affidavits upon which the order of arrest was granted, not only failed to show a cause of arrest, but do not even make out a cause of action against the defendant Bogart. 1. The only cause of action set forth in the affidavits is one against the firm of Bogart, Jefferis & Co., on an alleged purchase of goods by the firm. 2. No personal participation by the defendant Bogart in the purchase in question is alleged in the affidavits; on the contrary, his individual name is not mentioned in the affidavits in connection, either with the purchase or with any of the subsequent matters alleged therein. 3. The only ground, therefore, upon which the defendant Bogart can be held liable, in any manner, upon the purchase in question, is that of direct and expressed, or implied and constructive authority on the part of the defendants, Jef-

feris and Jackson, to bring him thereby. 4. There is nothing in the affidavits showing that Bogart in any manner expressly authorized, or was even cognizant of, the purchase at the time it was made, or at any time after. 5. Nor is any constructive authority on his part shown as to the purchase by the allegation as to partnership. The partnership alleged was for the prosecution of the "auction" business. The legitimate scope and object of the auction business is to sell for others, and not to purchase on individual account. The action being against the defendants upon a firm, and not an individual, purchase; and the only ground upon which the defendant Bogart can be held liable, being that of constructive or partnership authorization thereof, it must appear affirmatively by the affidavits, that the purchase was within the legitimate scope and object of the firm-business. Instead of which it not only appears that the purchase was not within the scope of the business of the firm, but that the plaintiffs were fully cognizant of the nature of that business.

II. But conceding that the affidavits disclose a cause of action, they still fail to show a cause of arrest against the defendant Bogart. 1. The arrest being founded, not upon the mere liability upon the purchase, but upon the fraudulent representations alleged in the affidavit, the defendant Bogart was not liable to arrest, even admitting that he participated in, and was bound by the purchase as a partner, if he did not also participate either directly or by adoption in the fraud of his copartners. 2. There is nothing in the affidavits showing that Bogart, even conceding his knowledge of the purchase, either made, or authorized, or was cognizant of a single one of the representations alleged in the affidavits; on the contrary, his name is not even mentioned in the affidavits in connection with any part of the transaction. 3. Nor can Bogart be held a constructive, if not an actual participant in the fraud by virtue of the partnership merely, there being no implied authority on the part of a partner or other agent to commit a fraud on behalf of his partner or principal, or to bind such partner or principal in any manner thereby. 4. Nor was section 179 of the Code intended to apply to constructive as contra-distinguished from actual fraud. 5. There is nothing in the affidavits showing that Bogart ever adopted the fraud of Jefferis and Jackson in any

way or shape. There is nothing in the affidavits showing that Bogart knew of the fraud practised upon the plaintiffs by the defendants Jefferis and Jackson; or even of the purchase. Nor would adoption of the fraud follow from a knowledge of the purchase, unless accompanied by a knowledge of the fraud. There is nothing in the affidavits showing that the defendants as a firm, or that Bogart as a member of the firm, or otherwise, ever received the goods themselves, or the proceeds thereof, or any benefit therefrom.

*John J. Townsend,* for the respondents.—I. The appellant admits the truth of all the allegations upon which the order of arrest was granted.

II. The papers clearly show that the defendants were guilty of a fraud in contracting the debt, for the recovery of which this action is brought. It cannot be necessary for the respondent to establish that each one of the three confederates participated actively in each one of the numerous incidents which characterize this fraudulent transaction. It is evident from the whole case, that the defendants purchased these goods with the preconceived design not to pay for them. They used an artifice to deceive and entrap the plaintiffs. They were not merely insolvent, they had no means whatever, or any expectation of any. They shipped the merchandise immediately to Baltimore, and sold or pledged it for half its value. They imposed upon the plaintiffs and the community by the magnificence of their exterior and interior at 157 Broadway. The same fraudulent practices they resorted to with Messrs. Britton & Co. See the affidavits. (Hall *a.* Naylor, 18 *N. Y.*, 588.)

By the Court.*—Bosworth, Ch. J.—These goods were sold to the defendants and delivered to them, and the firm has disposed of them. As they were obtained by fraud, an action of trover, or an action on the case for the deceit and fraud, will lie against all, although Bogart, as a matter of fact, was ignorant of the fraud. (Hawkins *a.* Appleby, 2 *Sandf.*, 421–429; Locke *a.* Stearns, 1 *Metc.* (*Mass.*), 560.)

---

* Present, Bosworth, Ch. J., and Hoffman, Woodruff, Moncrief, and Robertson, JJ.

Cary *a.* Hotailing (1 *Hill*, 311) is an authority that trover will lie for the value of the goods on such a state of facts as the evidence establishes.

Affidavits establishing such a cause of action, of themselves authorize an order to arrest and hold to bail. (*Code*, § 179, subd. 1.)

Such a rule as applied to the partner not guilty of actual fraud, is no more severe than the one in force prior to the Code. In an action of trover a defendant was held to bail as a matter of course, without any order of the court or of a judge authorizing it. (2 *Rev. Stat.*, 3 ed., 48, § 8, subd. 4.)

I do not think that the allegation in Yale's affidavit, that this action is brought to recover the price of goods sold, justifies the inference that the plaintiffs' complaint does or will state merely a contract of sale, a delivery, expiration of the term of credit, and non-payment of the price; even if it be assumed, or would be true, that in an action in that form, Bogart could not be held to bail for a debt fraudulently contracted by his partners, he not being a party to the fraud.

These affidavits detail the whole transaction, and I find nothing in the allegations referred to inconsistent with a purpose to declare in such form of action as will secure the right to hold all the defendants to bail. Neither the contents of the summons nor those of the complaint are stated; the affidavits show that the price agreed to be paid is the sum sought to be recovered.

But I think the affidavits should be liberally construed in this respect in favor of the plaintiffs, as they state facts enough to establish a cause of action which of itself gives a right to hold to bail; and as it does not appear that the plaintiffs have not stated or will not state such a cause of action in their complaint, nor that they are precluded by the form of their summons from doing so.

But I am not satisfied that the defendant Bogart cannot rightly be held to bail under subdivision 4 of section 179 of the Code.

I think all the defendants were guilty of a fraud, within the meaning of that section, in contracting the present obligation.

It is well settled that the fraud of one member of a firm in obtaining goods which have gone to the firm's use, is, in judg-

ment of law, the fraud of all, in such sense that an action will lie against all of them for it, and that all are liable for the damages caused by it.

Bogart, as well as his copartners, contracted the debt; and he, as well as the others, was guilty of a fraud in contracting it, for the purpose of every civil remedy to obtain redress for such fraud (unless he be entitled to exemption from being held to bail for it). In the nature of things, he can claim no other exemption, and the question is, Is that secured to him by the Code?

I cannot understand how it is that, on the same state of facts, the judgment of law is, that in an action based solely on the fraud, and to recover the damages caused by it, it is his fraud; but so far as his liability to be held to bail is concerned, he is guiltless of all fraud, and has neither committed nor assented to it. The Code does not, in terms nor by any fair intendment, make any such distinction.

I think the language, "when the defendant has been guilty of a fraud," must be deemed to have been used in subd. 4, § 179, to designate and include all those who, by settled law upon a given state of facts as to the contracting of debt, are the persons contracting it, and who also have been guilty of fraud in contracting it.

It is under this rule of construction that it has been held that a defendant in an action of *crim. con.*, or for seduction, may be held to bail at the suit of the husband or father, as one who has done an injury "to the person" of the plaintiff. (*Code*, § 179, subd. 1; 4 *How. Pr.*, 234; 3 *Code*, 9.)

So long as the law imputes the fraud to him, and for the purposes of the civil remedy of the party defrauded declares it to be his fraud, I think he is as liable to be arrested and held to bail as if he had committed it in intent and in fact. This conclusion finds some analogy in the rule, that although an infant is not liable upon his contracts, yet an action for assumpsit will lie against him for money embezzled, as the court, in furtherance of justice, will look through the form of the action to the tortious nature of the transaction. (1 *Esp.*, 172; 3 *Pick.*, 492; 5 *Hill*, 391.)

On another view, I think he may rightly be held to bail under subdivision 4. I think these affidavits show enough to justify

the inference, that he knew a fraud had been committed, and assented to it.

The affidavit of Britton shows that the goods bought of his firm were sent to the defendants' store, part on the 27th, and the rest on the 28th of July ; they were bought for cash, to be paid on delivery of the goods, and that a bill for the price was sent with them, headed, in writing, "prompt cash ;" that these goods were sent to Baltimore by the defendants immediately, and an advance of $2,000 obtained on them.

The purchase of the plaintiffs was made, and the goods were delivered, on the 2d July, 25 days prior to the purchase from the Brittons. I think the inference a just one, that Bogart, being a partner, and nominally, the actual head of the firm, knew that these purchases had been made, and that the goods had been disposed of by the firm ; that they had not been paid for, and that the firm had no means with which to pay for them, and could have had no intention of paying for them at the time they were bought.

It requires great credulity to believe that he was ignorant of the repeated applications for payment made at the store through a period of six weeks, and did not learn, if he did not know when the goods were bought, that they were procured by fraud.

And I think it a just conclusion, from the affidavits respecting the nature of the business which the defendants professed to transact, and that during this period they were not visibly doing any business in that line, that he was aware of and was expecting gains from the fraudulent operations in which all the other partners are shown to have been actively engaged. Jackson and Jefferis were both asked on the 20th of September, if the plaintiffs could not in some way get the goods back. Jackson referred to Jefferis to give the answer, and Jefferis "shook his head without saying any thing." He was then asked if the goods were sold to Byerly. He said, "Yes, partly so and partly not." This is some evidence of a demand of the goods and of a refusal to restore them. The effect of that is not doubtful. (Holbrook *a.* Wright, 24 *Wend.*, 178.)

Bogart does not choose to make any affidavit, or attempt to repel any one inference which would naturally be drawn from the character of these transactions and the fact of his being the head of the firm.

Under any view suggested, I think the defendant Bogart was rightly held to bail.

The fancied severity of such a rule will find a perfect analogy in many other cases.

Common carriers are liable in an action for an injury to the persons of individuals who may be injured by the negligence of their servants. (Bostwick *a.* Champion, 11 *Wend.*, 571; 18 *Ib.*, 175; .Cotter *a.* Bettner, 1 *Bosw.*, 490.)

In such an action the defendant may be held to bail by § 179 of the Code.

Whether the negligence was that of one of the parties only, or is that of a servant hired and paid by one partner only, as in Bostwick *a.* Champion, all the partners may be held to bail, although in the one case one partner alone did the wrong; and in the other, neither actually did it or assented to it. They, as well as the parties *actually guilty*, are held to bail, because in law they are all guilty of the wrong, on the same principle and in the same sense that in the present case are all guilty of the fraud practised on the plaintiffs.

I think the order should be affirmed.

MONCRIEF, J.—In my opinion the arrest can be sustained on the affidavits, as establishing a case of trover and conversion, and that the complaint thus formed would be consistent with the affidavits.

Moreover, a case is presumptively made out of adoption, acquiescence, and participation in the fruits of the fraud. I think a partnership raises of itself such a presumption, and the facts here stated strengthen such presumption.

Hence, without saying that a copartner may not be free from liability to arrest in a plain case of entire innocence, and attempt or disposition to redress the fraud, I am of opinion that the arrest should in this case be sustained and the order affirmed.

WOODRUFF, J., disenting.—The affidavits upon which the order to arrest the defendants in this action was founded, state that " the defendants compose the firm of Bogart, Jefferis & Co., and have been heretofore, and now profess to be engaged in the auction business in the city of New York;" that goods were purchased

from the plaintiffs by the defendant Jefferis in the name of the firm of Bogart, Jefferis & Co., and professedly for their benefit; that purchase is shown to have been made by gross misrepresentations, and a most aggravated fraud in procuring the goods is shown to have been perpetrated by Jefferis; and enough is shown to indicate very clearly that the defendant Jackson was a party to the fraud, and was active in the endeavor, by repeated false representations, to quiet the apprehensions of the plaintiffs, induce the belief that the goods would be paid for, and so prevent their resort to legal measures for redress.

An order of arrest having been obtained against all of the defendants, the defendant Bogart moves to discharge that order so far as it relates to himself, on the ground that it does not appear that he has been guilty of any fraud, or that he is liable to arrest in this action for the fraud of Jefferis and Jackson.

It is clear that when goods are purchased for, and come to the use of a copartnership by means of the fraud of one of the partners, no title to the goods is acquired thereby, and trover may be brought for the conversion thereof, or the goods may be replevied. Or an action on the case will lie for the deceit practised by one of the partners to obtain the goods.

If the goods are in the possession of the firm, or if they have been converted to the use of the firm, the action of trover will lie against all of the partners.

And even if no benefit has been derived by the firm, or by the innocent partners, from the fraud, still, if the fraud was committed by the others while acting within the scope of the copartnership business, it has been held that all are liable for the damages sustained thereby, even though some were ignorant of the fraud.

The principle upon which this rests is stated in Hawkins a. Appleby (2 *Sandf.*, 428) to be, that by forming the connection, partners pledge themselves for the good faith of each other, and impliedly agree to be responsible for what they shall respectively do within the scope of their copartnership business. (See the cases there cited, and *Collyer on Part.*, book 3, ch. 1, §5; *Perkin's ed.*, 401–413, §§ 445–456; Cary a. Hotailing, 1 *Hill*, 313.)

And the principle is supposed to be the same as that which holds all the partners liable for the negligence of one in the conduct of the copartnership business. (Bostwick a. Cham-

pion, 11 *Wend.*, 571; 18 *Ib.*, 175; Cotter *a.* Bettner, 1 *Bosw.*, 490; Moreton *a.* Hardern, 4 *Barn. & Cr.*, 223; and see also 15 *Mass.*, 75, 331.)

But to maintain trover against all the partners for goods fraudulently purchased, or an action on the case for the deceit, it must appear that the goods came to the possession and use of the copartnership, or that the purchase was within the scope of the copartnership business, or that the act of fraud by which the damages complained of were caused, was within the power and authority conferred upon the fraudulent partner, either express or implied from the nature of the copartnership. This will be found to lie at the foundation of all the cases which hold one partner liable for the fraud of the other.

If the present action was an action of trover for the wrongful conversion of the plaintiffs' goods, or was an action on the case for the deceit practised by the defendant Jefferis, the propriety of the order to arrest all of the defendants would depend on the single question, whether the plaintiffs have shown that such action can be maintained against them all. Showing such cause of action, shows at the same time a right to have the defendants arrested in the action founded thereon. (*Code*, § 179, subds. 1, 4.)

But the plaintiffs' affidavit states distinctly that this is an action "brought to recover the price of 300 dozen knit shirts and drawers, sold and delivered by the plaintiffs to the defendants."

It is, therefore, not an action of trover for the wrongful conversion of the plaintiffs' goods.

It is not an action on the case for false representations, fraud, or deceit, to recover the damages sustained thereby.

It is not an action of tort in any form or by any name, unless we are to assume that the affidavits are founded in mistake, and do not truly represent in legal terms the nature of the remedy the plaintiffs are pursuing.

But it is an action affirming the sale of the goods as a valid sale. It seeks to recover the price as a debt due by the defendants to the plaintiffs upon and for such sale.

That the defendants are all liable upon a contract of sale made in the name of all, and for goods delivered to all, is not questionable.

And if it be true in fact, as is somewhat loosely and generally

stated in the affidavit, that the goods were "delivered to the defendants," they may be all liable for the price, whether the purchase was within the scope of the copartnership business or not.

The same principles which would make them liable in trover, where trover would lie against all, or in an action for the deceit when that could be sustained against all, would, *a fortiori*, establish their liability for the debt.

But establishing a joint liability for the debt, does not, *per se*, entitle the plaintiffs to hold the defendants to bail. In an action of trover, or an action on the case for deceit, it is enough to show a cause of action against all, and the right to hold to bail follows of course; but here proving the debt only shows a joint liability to such consequences as flow from the recovery of a judgment for money due on a contract, and these do not include a liability to arrest. Something more—some extrinsic facts, not appearing by the record—must be shown.

Bogart may therefore be liable for the debt—a cause of action may be established, *prima facie*, against him, and he may be liable to all the consequences which flow from showing a joint liability with his partners for a demand accruing in the copartnership business, upon a contract made in the name of the firm, and still not be liable to arrest in this action for his partners' fraud.

I am not prepared to say that, where a plaintiff affirms the contract of sale, and founds his action thereon, and shows the fact of the defendants' copartnership, and so their joint liability for the price, each of the copartners is liable to be held to bail, because the purchase was obtained by the fraud of one of them.

The only provision of the Code under which, in such case, the defendants can be held to bail, is subdivision 4, of section 179, which imposes the liability to arrest "when the defendant has been guilty of a fraud in contracting the debt for which the action is brought."

I apprehend that this does not mean that every defendant who is liable for the debt shall be liable to arrest, when one only committed the fraud, and the others are innocent. It is the defendant "who has been guilty of the fraud" that may be arrested. If it were not so, then all joint makers of a note

might be arrested, though some of them were in truth makers for accommodation, or sureties for the rest, if the latter by fraud procured it to be discounted.

There may be many persons liable for the same debt, and by force of the same contract, but it is opposed to the legislation of this State, for nearly thirty years, to hold any debtor to bail, and subject him to imprisonment, unless he is himself guilty of some fraud.

The construction of this subdivision of section 179 must be, in this respect, the same as the next following, which provides that the defendant may be arrested when he "has removed, or disposed of his property, or is about to do so with intent to defraud his creditors." It would hardly be claimed, I think, by any one, that, in an action against three partners, on a copartnership note, all of them could be held to bail on proof that one of them had disposed of his property to defraud his creditors.

And in the present case, if it were conceded that all of the defendants are liable to the plaintiffs for the price of the goods, they cannot, in my opinion, be all held to bail in an action on the contract to recover that price, unless the proof also shows that they are all parties to the fraud. No one but he or they who are "guilty of the fraud in contracting the debt," are liable to the arrest in such an action.

This being an action on the contract, in affirmance of the sale, and to recover the price; the plaintiffs must, to sustain the order of arrest as against the defendant Bogart, show two things:

*First,* that he is liable in the action for the price of the goods; and, *second,* that he has been guilty of a fraud in contracting that liability.

Under this latter proposition it may, however, be conceded, that if with knowledge of the fraud he assents to, and adopts the purchase, or receives the benefit of it, he is a fraudulent debtor within the meaning of the clause in question.

The goods in question do not appear to have been purchased in or for the business in which the copartnership was engaged. That was the "auction business." That is not shown to embrace the purchase of goods at all. It is not shown that prior to the purchase in question the firm of Bogart, Jefferis & Co.

had ever purchased any goods. They had received consignments of goods for sale at auction, and had sold them. They had been employed by the plaintiffs to sell goods at auction, and for all goods consigned to them by the plaintiffs, and sold, they had duly accounted and paid.

The affidavits fail to show that the purchase of goods was within the scope of the copartnership business, or that Bogart was cognizant of the fraud, or that he ever assented in any manner to become a party thereto.

If it were conceded that the words of the plaintiffs' affidavit, which, in general terms, states that the "goods were delivered to the defendants," in connection with the fact that they were disposed of, sufficiently shows that the goods came to the use of the firm so as to make the partners liable in trover for their value, or in assumpsit for their price; still, if the action be brought in affirmance of the sale, and for the price of the goods as a debt due by the firm, the extrinsic fact that the defendant Bogart was guilty of a fraud in contracting the debt, is wanting. It is not shown that he was aware of the representations by which the goods were procured, nor that he at any time assented to the purchase with any such knowledge. Nor is it even shown that he ever had actual knowledge that the goods had been purchased or disposed of.

Being one of the partners, he may no doubt be assumed to know what goods are purchased in the copartnership business. It not being shown that this purchase was within the scope of the partnership, that presumption does not arise here. If the goods were in fact delivered at the defendants' store, it does not follow that Bogart knew that Jefferis had committed any fraud in procuring them, or that he committed any in disposing of them: still less that he knew they were procured or disposed of without intent to pay for them.

I am conscious that the case made by the plaintiffs' affidavits may warrant the suspicion that Bogart was a party to the fraud, but an order of arrest ought not, I think, to be made on suspicion. Those affidavits may, perhaps, by some be regarded as showing, *prima facie*, that he was cognizant of the fraud, and assented to it. If the purchase and sale of goods had been within the scope of the copartnership, or it had appeared that he knew that the goods were purchased in the name of the

firm, or it had appeared that the goods were appropriated to the use of the firm with his assent, I should incline to that opinion. In such case he must be deemed to have been so far acquainted with the business of his own firm as to know that the goods had not been paid for, and also to know that the proceeds of the sale thereof were not applied to that payment, and that the purchase was made without the means of payment; and his acquiescence under such circumstances would tend strongly to show that he was a party to the whole fraud, and would at least warrant the continuance of the order, when he, by no affidavit or proof, denies his complicity in the fraud.

The proposition upon which I insist is, that in an action on the contract for the price of the goods, a partner who has not been guilty of the fraud as an actual participator therein, nor by assenting to or adopting the purchase with knowledge of the fraud, cannot be held to bail. I think that the affidavit of the plaintiff in this case ought to be taken to mean what it says; and that this is, what the plaintiff swears it is, an action founded on a sale, and to recover the price agreed to be paid.

I do not appreciate the suggestion, that wherever trover would lie against all to recover goods purchased fraudulently by one partner, there each may be held to bail in an action on the contract of purchase.

The Legislature have seen fit to permit the holding to bail in all actions of trover, whether the right to maintain the action arises out of a fraud or not. And so they have permitted an arrest wherever an action on the case, for fraud in obtaining property, will lie. But they have not permitted an arrest in an action on the contract, for the price, on mere proof that the action will lie.

If it were conceded that the plaintiffs had a choice of remedies, *i. e.*, to sue in trover, and hold all the partners to bail, or to sue on the contract, and hold those only to bail who were guilty of the fraud, I perceive no legal absurdity in the result.

And when the Legislature, in subdivision 4, of section 179, provided that in an action on contract, the defendant who had been guilty of a fraud in contracting the debt, or incurring the obligation, might be held to bail, I think they meant a defendant who had been guilty of actual fraud, and not one who

might have incurred a responsibility in some other form, for the fraud of a partner.

ROBERTSON, J., also dissented.