[PHILADELPHIA, FEBRUARY 6, 1833.]

## NISBET and another *against* PATTON and others.

### IN ERROR.

The conversion by one partner of property, which came into the possession of the firm on partnership account, is the conversion of all, and makes all liable in trover.

On the return of a writ of error to the District Court, for the City and County of Philadelphia, it appeared that this was an action of trover, brought by *James Patton* and others, assignees of *Henry Simpson*, against *Michael Nisbet* and *David C. Wood*, trading under the firm of *Michael Nisbet & Company*, for the conversion of six promissory notes, drawn by different persons, in favour of *Henry Simpson.*

*Simpson,* who was a dealer in dry goods, had been in the habit of depositing goods with the defendants below, who advanced their notes upon them. The notes for the conversion of which this suit was brought, had been placed in the hands of the defendants below, with an understanding, that when goods were deposited with them, the notes were to be returned. On the day of *Simpson's* failure, which took place on the 12th *January,* 1826, he deposited a quantity of goods with the defendants, and on the following day he executed to the plaintiffs below an assignment for the benefit of his creditors. On the same day his assignees sent to demand the notes. *Nisbet,* on whom the demand was made, said he would deliver the notes, but could not get them then, as they were locked up in his fire proof, and his book-keeper was gone home with the key, but promised on the honour of a gentleman, to give them up in the morning. On being called on again on the following morning, he said that he would not give them up, or that he had not them. The demand was made on *Nisbet* alone, *Wood* not being present.

On the part of the defendants below, it appeared, that *Michael Nisbet,* a short time previous to the formation of the partnership of *Michael Nisbet & Co.,* of which *David C. Wood* was a partner, had been a partner in another firm, trading under the firm of *Cohen and Nisbet;* that by the terms agreed upon at the dissolution of the latter firm, he was authorised to settle its affairs, and that *Simpson* was indebted to the firm of *Cohen and Nisbet,* to a larger amount than that which was claimed by the plaintiffs in this cause. *Nisbet,* therefore, claimed a right to retain the notes in controversy, alleging that

he had a lien upon them for the debt due by *Simpson* to the firm of *Cohen & Nisbet.*

The defendant then produced and gave in evidence a promissory note, dated the 2nd of *August*, 1825, at six months, for five hundred and twenty-five dollars and seventeen cents, drawn by *Henry Simpson* in favour of *Cohen & Nisbet;* another note dated the 11th of *August*, 1825, at six months, for four hundred and three dollars and twenty cents, also drawn by *Henry Simpson* in favour of *Cohen & Nisbet*, and a third note dated *August* 13th, 1825, at six months, for four hundred and forty-five dollars and twenty cents, drawn by *Henry Simpson* in favour of *Cohen & Nisbet.* They also gave in evidence a copy of an account current, dated 13th *March*, 1826, rendered by *Michael Nisbet & Co.* to the assignees of *Henry Simpson*, showing a balance of two hundred and fifty-three dollars and fifty-eight cents, due to the assignees, and a receipt for that sum dated the 14th of *March*, 1826.

The counsel of *David C. Wood*, requested the judge who tried the cause in the court below, to charge the jury, " That if they believed from the evidence that *Nisbet* detained the notes in controversy on behalf of *Cohen & Nisbet*, and not on behalf of *Michael Nisbet & Co.*, then *David C. Wood* is not liable, and the jury ought not to find a verdict against him."

The counsel for the plaintiffs below, requested the judge to charge the jury as follows:

" 1. That if the promissory notes for which this action is brought, were placed in the hands of the defendants as a temporary security for moneys advanced to *Henry Simpson*, until a security in goods should be delivered, and that security was afterwards deposited, the defendants had no lien upon the notes against *Simpson* or his assignees as a security for any claim of another firm of which the de-defendants, or one of them, were or was a member.

" 2. That if the notes in question were so delivered to the defendants for a specific purpose, after that purpose was complied with, the defendants are answerable in this action after demand and refusal by the plaintiffs, and it is of no consequence to the validity of the plaintiffs' claim against the defendants, that one of them alone retained the notes for a purpose in which he alone was interested."

The judge instructed the jury as he was requested by the counsel for the plaintiffs, and added, that the action being trover, the doctrine of set-off did not apply; but had the action been one of contract, as the notes were not due when the suit was brought, set-off could not be permitted: That there being no defence either by way of lien or set-off, and the defendants being copartners in business, and having as such received the notes for a particular purpose, whenever that purpose was complied with, they were bound to surrender the notes; and the circumstance of *Wood's* not taking an active part in the business, and not having been present when the demand was made on

*Nisbet,* and *Nisbet's* retaining the notes for the debt of *Cohen & Nisbet,* did not absolve *Wood* from liability in this action.

With respect to the point propounded by the counsel of *Wood,* his HONOUR said, that he was unable to instruct the jury as he was requested. The law was not so, but just the contrary. The defendants being partners, and the notes in question having been delivered to *Michael Nisbet* for purposes connected with the business of the partnership, the conversion of one, was, in point of law, the conversion of both.

The jury found a verdict for the plaintiffs, and the defendants sued out a writ of error.

*Stroud,* for the plaintiffs in error, cited *Vasse* v. *Smith,* 6 *Cranch,* 226. 2 *Phill. Ev.* 125. *White* v. *Demary,* 2 *New Hamp. Rep.* 546. *Bull. N. P.* 44. 2 *Saund. on Pl. and Ev.* 478. *Collier on Part.* 253.

*Rawle, Junr.* contra, referred to *Gow on Partnership,* 52, 79, 174, 175. *Durell* v. *Mosher,* 8 *Johns. Rep.* 347. 1 *Maule & Selw.* 388.

The opinion of the court was delivered by

GIBSON, C. J.—The case of *White* v. *Demary,* 2 *N. H. Rep.* 546, though apparently in point, depended on a principle entirely distinct from that which governs the transactions of partners. There the defendants were but joint baillees; and the law is settled that the act of a tenant in common shall not prejudice the title of his co-tenant, or charge him with a tort. It is otherwise with partners, each of whom constitutes the other a general agent of the firm with power to bind it, not only by his contracts, but by his acts in the scope of the business. His authority to contract has never been disputed; and the responsibility of the firm for the legal consequences of his acts, stands on a principle equally settled. Thus, in *Willet* v. *Chambers,* *Cowp.* 814, an attorney whose partner had received money to be laid out on a mortgage, was held liable for it though the mortgage was forged by the receiving partner without the knowledge of the other. The same principle was held in the *Manufacturers and Mechanics Bank* v. *Gore,* 15 *Mass. Rep.* 75, and *Boardman* v. *Gore, Id.* 331; and it has been decided in *Biggs* v. *Lawrence,* 3 *T. R.* 454, that a trading on joint account in contraband goods, will implicate an innocent partner. So in *Hadfield* v. *Jameson,* 2 *Munf.* 65, it was determined that the fraud and misconduct of one part owner which produced the loss of a ship and cargo, affected the claim of both to freight under a charter party. It is, however, conceded, that both would have been answerable here for the act of *Nisbet* in an action on the contract to redeliver the notes after the purposes of the deposit were satisfied; and this concession includes the decisive fact, that the refusal of *Nisbet* was the refusal of his co-partner. Being so for any purpose, it must be so for every purpose; for it is not easy to see why it should be his act to charge him on a contract, and not his act to charge him with a tort. It is not doubted that partners may

(Nisbet and another *v.* Patton and others.)

be sued in trover where they join in the conversion ; and, do they not join where the act of one is the act of all ?

It can be but of little account to them whether they are made to respond in the one sort of action or the other; for though it be true that there is no contribution between tort feasors, it is equally true that a partner may be made answerable to the firm for misconduct in involving it in responsibility.    It is said indeed that trover to reco-ver damages for a destruction of the joint property, is the only action founded in tort that can be maintained between partners.    That would seem, however, to have been asserted without sufficient considera-tion ; for it is not easy to see why a partner should not be answerable to the firm, as in any other case of principal and agent, for gross and wilful misfeasance.    In *Hadfield* v. *Jameson*, it was taken for grant-ed, that the delinquent partner was liable to the other for the loss of the ship ; but certainly not in trover, for his acts were evidence of any thing but conversion.    The act then of *Nisbet*, being *prima facie* the act of his partner, was evidence of a joint conversion, subject however to be rebutted by proof, if such there were, that the latter had openly disclaimed the act at the time ; and the direction was in all respects essentially right.

Judgment affirmed.