## FRENCH & DAVIES v. ROWE & HYDE.

1. USURY: ESTOPPEL IN PAIS. Where the payees of one, and the indorsers of another promissory note, both of which were executed by a firm for a consideration tainted with usury, before taking the same, called at the business place of the makers thereof, and asked one of the partners if the debt represented by the notes was "all right, and would be paid," to which it was replied, that "it was, and would be promptly paid;" after which they took the debt by assignment (without any knowledge that it was tainted with usury), in payment of a debt due them from the assignors, it was held:

    1. That the representations made by one of the makers operated to estop them from interposing a plea of usury as a defense in an action on the notes. (WRIGHT, Ch. J., dissenting.)

    2. That such representations made by one partner bound the firm.

*Appeal from Scott District Court.*

FRIDAY, APRIL 8.

THIS is an action on two promissory notes—one executed directly to the plaintiffs, and the other to Mrs. Ann Cotes,

and by her indorsed to plaintiffs.   The two notes amounted to the balance due Cook & Sargent upon a series of usurious transactions, embracing more usury than the balance due.   George B. Sargent, one of said firm, being indebted to plaintiffs, proposed to assign them the claim of Cook & Sargent on the defendants in payment; plaintiffs said they would see defendant and let him know, and thereupon plaintiffs called at defendants' place of business, and there met Mr. Rowe, and asked him "if the debt to Cook & Sargent was all right, and if it would be paid.   Mr. Rowe answered that it was, and would be promptly paid; that they were owing Cook & Sargent a balance which they were gradually paying off; that they had assets which they were converting, and that they would pay the notes without fail."   The notes were then executed, and plaintiffs received them in payment, relying on defendant's representations and promises, and in consequence of them.   The statements were made by Rowe alone, in the absence and without the knowledge of his partner, Hyde.   There is no evidence or pretense that plaintiffs had any knowledge of the usury, or that there was any design or purpose on the part of any one to evade the usury laws by the transaction.   There was a trial by the Court, and judgment for plaintiffs, from which the defendants appeal.

*Cook & Drury* for the appellants.

1. We deny that the doctrine of estoppel applies to usurious contracts.  Story Contr., § 602; *Brown v. Lee & Gray*, 4 Iowa, 490; Rev., 1860, § 1791.  The New York decisions relied upon to sustain estoppel are all by inferior courts.

2. A representation by one partner that a firm note tainted with usury is valid and will be paid, does not bind his copartner, the latter being ignorant of the representa-

tion. *Hutchins* v. *Turner*, 8 Humph. (Tenn.) 415; Story Part., § 110.

*Grant & Smith* for the appellees.

1. The representations made by the one partner are binding upon the firm. They are in the nature of a new contract to pay said notes, and the want of knowledge by the one partner as to the contract of the other does not affect their validity. Coll. Part., § 401; 3 Kent., 41; *Wilkins* v. *Pierce*, 5 Denio, 541; *Walker* v. *Clarke*, 8 Iowa, 474; *Saunders* v. *Bentley*, Id., 546; *Wood* v. *Braddeck*, 1 Taunt., 104.

2. The makers of the notes are estopped by their representations to the plaintiffs. *Truscott* v. *Davis*, 4 Barb., 495; *Welland Canal Company* v. *Hathaway*, 8 Wend., 483; *Dezell* v. *Odell*, 3 Hill, 221; *Chamberlain* v. *Townsend*, 21 Barb., 611; *Culver* v. *Harrow*, 22 Ill., 345; *Lucas* v. *Hart*, 5 Iowa, 415; *Frost* v. *The Saratoga Mutual Insurance Company*, 5 Denio, 154; 1 Greenl. Ev., §§ 22, 27, 204, 207, 209; *Wendell* v. *Van Rensselaer*, 1 John. Ch., 344; Coke Litt., 352.

COLE, J.—By our statute against usury, it is provided that "if it shall be ascertained in any suit brought *on any contract*, that a rate of interest *has been contracted for* greater than is authorized by this act, either directly or indirectly, in money, property, or other valuable thing, the same shall work a forfeiture of ten per cent per annum upon the amount of such contract to the school fund of the county in which the suit is brought, and the plaintiff shall have judgment for the principal sum, without either interest or costs," &c. Rev. of 1860, § 1791.

Whether the "contract" by the defendants, as evidenced in their notes, to pay plaintiffs the amount of their claim against Sargent, in consideration of defendants' indebtedness to Cook & Sargent, can legally be said to be a contract,

wherein "interest has been contracted for greater than is authorized by law," is not discussed by counsel, and in our view of the case need not be now determined.

The transcript fairly presents, and the counsel have argued two propositions, necessarily involved in the decision of this cause:

*First.* Can an estoppel *in pais* be interposed and made operative against the plea of usury?

*Second.* Does one of two partners possess the authority, by reason of the partnership, to make an estoppel which shall bind the firm against such plea?

I. Courts of justice are established for the purpose of ascertaining the truth, and meting out justice to parties litigant, in accordance with it; and hence the doctrine of estoppel is not favored in law, for an estoppel prevents a party from alleging or proving the truth. Yet courts of law do not hesitate to enforce this doctrine where it is clearly applicable; as where, if the party was permitted to prove the truth, contrary to his previous conduct or declarations upon which the adverse party had acted, gross injustice would be done to such adverse party. Or, as the doctrine is clearly stated by WRIGHT, J., in the case of *Lucas* v. *Hart*, 5 Iowa, 415: "The estoppel is allowed to prevent fraud and injustice, and exists wherever a party cannot, in good conscience, gainsay his own acts or assertions; and it makes no difference in the operation of the rule whether the thing admitted is true or false, it being the fact that it has been acted on that makes it conclusive."

In the case of the *Welland Canal Company* v. *Hathaway*, 8 Wend., 483, the Court say: "as a general rule a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it; and when such denial will operate to the injury of the latter." In *Dexell* v. *Odell*, 3 Hill, 221,

the Court say : " Where a party, either by his declarations or conduct has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or some one claiming under him." See, also, Greenleaf on Ev., vol. 1, §§ 22, 27, 204, 207 *et seq.; Frost* v. *Saratoga Mutual Insurance Company*, 5 Denio, 154; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch., 344.

The correctness of this doctrine, in its general application, cannot be controverted, and the foregoing adjudications are cited to show that this case falls, in its general scope, within the language of the adjudicated cases, rather than to establish the doctrine. The particular point of difference between the cases cited and this case is in the fact that the defense, in this case, is usury, and the estoppel is sought to be applied so as to defeat the statute against usury, which, in its nature, is a penal statute. Upon principle, it seems to a majority of this Court, the peculiarity of this case does not exempt it from the general rule. The statute against usury was enacted for the protection of the oppressed and hopeful debtors against the cupidity and avarice of overreaching creditors, and it may be used by them as a *shield* against all such. It cannot, however, be made a *sword* with which to perpetrate injustice and frauds upon innocent third parties. To allow a party to represent to another that a note was all right, and would be paid at maturity, and specify the very means of payment, and thereby induce him to part with his money or property, and then be permitted to defeat a recovery by a plea of usury, would be to make the statute a weapon of fraud and injustice, instead of a cover and protection. Again, it will be seen that by the doctrine of estoppel a party is denied the opportunity of either pleading or proving anything contrary to his previous conduct or declarations which

have influenced his adversary; and hence, in the theory of the law, it cannot matter what a party proposes to plead or prove since the law stops him at the very threshold, and does not permit him to allege the statute against usury or any other cause, how meritorious or truthful soever it may be, against his former conduct or declarations, within the rule. The law so abhors his falsehood as that it will not hear him, though he speaks the truth. It estops him.

The principle of the law as thus stated has been exemplified in several adjudicated cases, which we will briefly examine.

By the statute of New York, in force when the decisions to which we shall refer were made, any contract whereby interest at a greater rate than seven per cent was agreed was rendered void, and the entire sum loaned or advanced was forfeited; and it was held by the courts of that state that the taking of accommodation paper at a discount greater than the lawful rate of interest was usury. *Johns* v. *Hoke*, 2 Johns. Cas., 60; *Wilkie* v. *Rosevelt*, 3 Id., 66, 206; *Mann* v. *The Commission Company*, 15 Johns., 55; *Bennett* v. *Smith*, Id., 355; *Powell* v. *Waters*, 8 Cow., 699; *Clark* v. *Sisson*, 22 N. Y. R., 312.

In the case of *Truscott* v. *Davis & Robinson*, 4 Barb. S. C. R., 495, which was an action brought to recover the the amount of a promissory note, made by the defendant, Robinson, payable to the order of defendant, Davis, and by him indorsed to the plaintiff, it was proved that the note was lent by Robinson to Davis to enable him to raise money, and that the plaintiff purchased it of Davis at a usurious rate of interest; the note having no inception till it passed to the plaintiff. It appeared, also, that Davis, at the time of the sale, represented to the plaintiff that it was a business note, valid in his hands against the maker, and plaintiff, relying on his representations, was induced to purchase the note. The Court say that it is the settled

doctrine of the courts that such a transaction is usurious, "but the true inquiry in this case is, whether Davis is estopped from setting up this defense. Facts may exist, which, in the eye of the law, constitute a defense, yet a party may, by his own conduct, deprive himself of the right of setting it up, as in this case, though the transaction is technically usurious, yet Davis may have forfeited the privilege of asserting it. * * * * The law allows the sale and purchase of business paper at any price the parties agree upon. If Davis, by his representations, induced the plaintiff to believe that the note was business paper, and, under such belief, to purchase it, he cannot be permitted, after entrapping the plaintiff into an unintentional breach of the law, to make a profit out of his own falsehood, at the expense of an innocent party. It would be a gross fraud, which ought not to be tolerated, much less sanctioned, in a court of justice.

In *Dowe* v. *Scutt et al.*, 2 Denio, 621, which was a suit on a note given to take up accommodation paper, sold at a large discount beyond the legal rate of interest, the plaintiff gave evidence to show that when Southard, one of the defendants, transferred the first note to him, he represented it to be a business note. The Court say: "Although the first note may have been unavailable in the hands of Southard, having been made for his accommodation, still, if he represented it to be business paper, and it was purchased by the plaintiff as such, relying upon the truth of that representation, then, although the purchase may have been at an usurious rate, yet as between the plaintiff and Southard, there would be no usury, and the latter would be bound by his guaranty that the note should be paid."

In *Chamberlin* v. *Townsend*, 26 Barb. S. C. R., 611, "the defendant made two notes to his own order, and delivered them to Holley, for the purpose of taking up other notes of the defendant, then past due. To each note he annexed

a certificate that the same was given for value, and would be paid when due. On this certificate, the note was sold to the plaintiff for an amount less than should have been paid for it, if discounted at legal interest, and the only question is, whether the defendant is estopped from setting up a defense of usury, in consequence of the certificate." The Court say : " It has been repeatedly held, and must be considered as the settled law of this court, until otherwise decided by the Court of Appeals, that the doctrine of estoppel applies to one who represents a note which he is about to sell, to be business paper, when in fact it is not, so as to preclude him from setting up the defense of usury. * * * There is no hardship or injustice in saying to the defendant that he cannot deny now what he represented the note to have been when the plaintiff was induced to purchase it. A contrary rule would hold out to men a temptation to deceive others by falsehood, and then allow them to take advantage of such falsehood to escape the liability so incurred."

In the case of *The Mechanics' Bank of Brooklyn* v. *S. P. Townsend*, 17 How. Pr. R., 569, upon facts very similar to the one last cited, the Court say : " Such a certificate, acted on in good faith, it has been repeatedly held, operates to estop the party giving it from falsifying his own statements. No man, as against an innocent person, can take advantage of his own fraud. So far from being, in such case, a defense, the fraud would itself, if any loss were sustained, be a positive cause of action, entitling the injured party to equivalent damages."

In *Watson's Exrs.* v. *McLaren*, 19 Wend., 557, the plaintiff, before he would advance money on the paper, called upon the defendant, showed him the note and guaranty, told him he was about to advance money upon the securities, and asked him if it was right, and received for answer, "it was good." The Court, COWEN, J., say : "Such a declara-

tion, nay, even standing by in silence and seeing a chose in action assigned for consideration, is an estoppel *in pais* against a debtor. Even a defense that a bond was given to secure a gambling debt, was in one case held to be cut off, by the obligor's admission of its validity to a proposed assignee."

In *Holmes et al.* v. *Williams*, 10 Paige Ch. R., 326, it was held by the Chancellor that, " where the holder and apparent owner of negotiable securities sells them at a discount to a *bona fide* purchaser, who has no knowledge of the purpose for which such securities were made, representing them to belong to himself, and to be business paper, the transaction is not usurious as between the vendor and vendee ; although the representation of the vendor was false, and the securities were in fact made for the sole purpose of being sold at an usurious discount in the market."

In the case of *Clark et al.* v. *Sisson et al.*, 22 N. Y. R., 312, it was held by the Court of Appeals of that State, COMSTOCK, Ch. J., delivering the opinion of the Court, in substance, that the doctrine of estoppel was applicable to the defense of usury, but that the representations inducing the purchase must be outside of the face of the bill or security sold.

In the case of *Roe* v. *Jerome*, 18 Conn., 138, the doctrine of estoppel, as recognized by the New York cases, was fully indorsed. In this case, the defendant, who was accommodation indorser for the purpose of enabling the party selling the note to negotiate a usurious loan, gave a certificate as follows :

" To whom this may concern. Any note or notes which may be offered by the bearer for discount or otherwise, signed by me, and payable to the order of Franklin Merrills, and dated March 1, 1844, are good true business notes. New York, March 1st, 1844, Chancey Jerome." Upon the faith of this certificate, the plaintiff purchased the note in-

suit at usurious rates. The defendant relied upon the plea of usury as a defense. WILLIAMS, Ch. J., in delivering the opinion of the Court, says: "The rule of law founded upon the soundest principles of morality is, that where one by his words or conduct causes another to believe in the exis- tence of a certain state of things, and thus induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a different state of things as existing at the time. * * * * * And whether this is a technical estoppel, or whether it is in the nature of an estoppel, is of little importance. It would be gross injustice to permit an individual thus to trifle with his own assertions, to the ruin or injury of another."

In the case of *The Middletown Bank* v. *Jerome*, 18 Conn., 443, in a case very like the one last cited, the Court, per ELLSWORTH, J., in affirming the doctrine of estoppel as ap- plicable to the defense of usury, say: "This is in accordance with a well settled principle, that if a person, by his words or conduct intentionally induces another to believe a fact, and upon its truth to commit his interest, he shall not after- wards deny the fact, in order to throw off responsibility. See, also, *Brown* v. *Wheeler*, 17 Conn., 346; *Clark* v. *Sisson*, 4 Duer, 408; *Davison* v. *Franklin*, 1 Barn. & Adolph., 142; *Packard* v. *Sears*, 6 Ad. & El., 477; (33 E. C. L., 155.) *Bearce* v. *Barstow*, 9 Mass., 45.

The fact that our statute directs the amount of the for- feiture, to wit, ten per cent per annum on the contract, to be paid to the School Fund, cannot, upon principle, make a different rule applicable in our State, from that in New York or Connecticut, where the forfeiture is greater, but goes to the party. The disposition or appropriation of the forfeiture is a mere *incident* to the prohibition of usurious contracts, which is the *purpose* of the statute. The statutes of each of said States, like that of Iowa, are adopted to prevent usurious contracts, and to that end they respec-

tively visit penalties upon those who violate them; the measure of that penalty, as well as the purpose to which it shall be appropriated, can in no manner affect the application of the doctrine of estoppel.

It will be observed, that the transaction forming the basis of this suit, was not made to evade the usury laws, nor with any knowledge of usury on the part of the plaintiff. If an intent to evade the statute against usury was manifest, it would present a case for the application of a different rule.

II. Upon the second proposition, this Court is unanimous in the opinion that the partner, Rowe, had authority, by reason of the partnership, to bind his copartner, Hyde, to the same extent that he could bind himself.

The space already occupied in the discussion of the first proposition precludes the propriety of extending this opinion for an elaborate discussion of this. We shall content ourselves with a statement of the principle upon which it rests, and the citation of a few authorities in support of it. The principle upon which the majority place the liability of defendants on the contract in suit is, that if they are permitted to deny what was stated by the partner, and upon which the plaintiffs relied and acted, a fraud would be thereby perpetrated upon plaintiffs; for such fraud the partners would be liable. Mr. COLLYER says that " one partner will be bound by the fraud of his co-partner, in contracts relating to the partnership, made with innocent third persons." (Collyer on Partnership, § 445, *et seq.*; see also Story on Partnership, § 108; *Hawkins* v. *Appleby*, 2 Sandf., 421; *Sweet* v. *Bradley*, 24 Barb. S. C. R., 549; *Nesbit* v. *Patton*, 4 Rawle, 120.) And if a partner would be thus liable for the fraud of his copartner when completely executed, he would, *a fortiori*, be liable where the intended fraud was prevented from becoming effectual by the interposition of the sound doctrine of estoppel.

The judgment of the District Court, being in accordance with these views, is

Affirmed.

Lowe and Dillon, J., concurring.

Wright, Ch. J., *dissenting.*—Whether one partner can bind the other by an admission or promise of the character shown in this case, I do not propose to discuss, more than to state that I concur in the view taken of the question in the foregoing opinion. The other point relied upon and decided, is the important one, and as I cannot bring myself to believe that the conclusion reached by the majority of the Court reflects the law, I propose to state very briefly my reasons for thus differing.

I assume, that aside from what took place between Rowe and the plaintiffs, the defense of usury would have been sustained. And in this I am warranted by the argument of counsel (of plaintiffs as well as defendant), as also by the facts proved, and conclusions of law based thereon, in the Court below. In other words, I start with the admitted proposition that if defendants are not, by their acts or admissions, estopped from setting up this defense, it would be as effectual against plaintiffs as the original payees of the notes, if they had brought this suit. The true and only question, therefore, is, whether they are thus estopped. And I may abbreviate the discussion, and at the same time be better understood, by saying that under our law I deny that the doctrine of estoppel applies to such cases, yielding to plaintiffs the full force and benefit of all the facts and circumstances as developed by the testimony.

Under the New York and similar statutes I concede that the weight of authority favors the proposition that the doctrine of estoppel applies to the defense of usury, as fully as to any other. But I must, at the same time, be permitted to say, that in my opinion the New York cases, in several instances, have gone far beyond a safe or just rule,

French & Davies v. Rowe & Hyde.

even under their statute. I cannot resist the conclusion that they apply a doctrine ("odious" though it is,) under circumstances which defeat the policy of the statute, and make it a protection to the remorseless creditor, instead of a shield to the unwary and straightened debtor.

Thus in *Chamberlain* v. *Townsend*, 26 Barb., 611, cited in the opinion of the majority of the Court, the defendant was held to be estopped by a "*certificate* attached to the note, that the same was given for value, and will be paid when due." And the same rule was followed under a precisely similar state of facts in *Mechanics' Bank* v. *Townsend*, 17 How. Pr. R., 569. Other cases in that State hold the same doctrine, to which I need not refer. But with due deference, I feel constrained to deny their correctness. COMSTOCK, Ch. J., in the subsequent case of *Clark* v. *Sisson*, 22 N. Y., 311, states the rule, which cannot well be denied, that the "representations, in order to estop the party, must be outside of the note or contract." And upon what principle it is that a mere certificate, dated, it may be, and obtained at the very moment of executing the note, and as a part of the same transaction, which only repeats in legal terms, if not in language, what is already in the note, and which can be obtained by the usurer as easily as the note, I say upon what principle it is that such a subterfuge shall be held to estop the maker, while the note itself has no such effect, I confess my inability to understand. It really seems to me to involve the absurdity, in the language of the rather sharp criticism of the reporter in the case in 17 How., of making the defendant liable, and taking the case out of the statute, "when he has certified to a falsehood twice, instead of once." The body of the note, almost invariably, states that it is given for value. If not, value or a consideration is implied, and all the world may take it with this implication, when the bill or paper is negotiable, and taken before

due. How is this implication strengthened, in the case of usury, by a certificate which states nothing more?

Now, there is more force and equity in the doctrine, when applied to those cases where the representations are made to the purchaser at the time of, or pending, the negotiation. For in such a case the indorsee does not act upon the note, or something which the usurer has obtained, but upon assurances given to him by the debtor himself, and under circumstances which it would seem ought justly and equitably, if not legally, conclude him from afterwards declaring the truth and defrauding the innocent purchaser.

Another matter may be noticed. Most, if not all, of the New York cases cited were, when accommodation paper was passed at a discount greater than the legal rate of interest, "it having no inception until it passed to the purchaser." In such cases, the representations or certificates made at the time of such inception would seem to stand upon a different footing from those made afterwards and which have no connection with the making or execution of the note.

But without further reference to the New York cases, and remarking that the case in 18th Conn., 138, did not involve any question of usury, I turn to our statute.

It was held in the case of *Bacon* v. *Lee & Gray*, 4 Iowa, 490, that under the statute the plea of usury may be successfully interposed to an action brought on the note by an innocent *bona fide* holder; and while the contract is not by the law declared wholly void, the same end is reached by declaring that in no case where unlawful interest is contracted for shall the plaintiff, in a suit brought on such contract, have judgment for more than the principal sum loaned. Thus it will be seen that the penalty is enforced if the party contracts for the usury, and that whether he ever takes it is entirely immaterial. Whenever it appears or is ascertained that such a contract is made, the party

suing upon or prosecuting the same can only have judgment for the principal sum, without either interest or costs. And then follows a provision, peculiar, as far as I have examined, to our statute, that there shall be a forfeiture of ten per cent per annum upon the amount of the contract to the school fund; *and whether the suit is contested or not, Court shall render judgment for the amount of interest thus forfeited in favor of the State, for the use of said school fund.*

Now, I concede that this plea or defense is personal, and that neither the State nor any third person can interpose it for defendant. And yet it must be conceded that if the usury appeared on the face of the note or contract it would be the duty of the Court to take cognizance of it, and render the proper judgment for the school fund, whether the action was or was not contested by the defendant. From this conclusion it seems to me there is no escape. And yet, in such a case, the usury is not as certain as the result of any trial or investigation invoked by the only party who, under the law, can ask the same. Or suppose (the defense not being made), it should nevertheless be shown and sufficiently appear during the progress of a trial that usury had been contracted for, what is the Court to do? let it pass, and take no notice of it, in the face of the statute declaring that the Court shall render judgment for the forfeiture whether the suit is contested or not? Or is not the true theory that the statute intended to prohibit such contracts, to visit the usurer with the consequences of his illegal acts, and to make it the duty of the Court to compel the defendant to pay to the school fund what is deemed a reasonable interest, instead of paying it to the usurer.

But it is in substance asked, how can the Court ascertain or know that which the defendant is estopped from proving? I answer, the usury either was or was not *contracted*

for. If not, that is an end of the controversy. If it was, the subsequent act or admissions of the borrower cannot change the fact nor make the contract any less usurious. The whole theory of the argument against my position concedes that though there was usury, defendant cannot be heard to assert. And yet, practically, he is heard, does assert it, and the Court knows as a fact that the law has been violated, before the sufficiency of the estoppel can be examined. If no usury, there is no need of inquiring into the estoppel. If there is (and there is none to the apprehension of the Court until it is ascertained), then, according to the argument, it is not ascertained, because defendant, by his act, is estopped from showing it.

It seems to me that such a view virtually defeats, and is at war with, the policy and intention of the statute. Estoppels, as before said, always odious, ought not to apply when they interfere with the policy of the State, or are used to defeat the operation of a statute found essential to the well-being of society, and designed to promote and exact honesty and probity in commercial transactions. Nor should the plea be received when the effect will be to deprive the Government of a sum which the legislative will has declared shall be forfeited for a violation of a positive command of the statute. Not only so, but bearing in mind that the *bona fide* holder may, by the express language of the statute, recover from the usurer the full amount paid for such contract, less the amount of the principal usury (Rev., § 1792), the propriety of allowing the defendant to assert the truth, instead of concluding him by the assertion of a second falsehood, and thus giving to a fraud, unworthy the protection of the wise legislator, the proper fruits of the illegal and prohibited transaction, it seems to me is most manifest. True, the rights of the State may, in some sense, be but incidental to those of the parties, or attach as incidents to the contract, and are not in the nature of vest-

ed rights. But the usurer, or what is the same thing, his assignee, who, under the law, as to the defense of usury, stands in no better position, asks the enforcement of a contract tainted with usury, and made in clear violation of an express statute. And in the face of the statute, which declares the consequences of such an act, and in the very form which is required by the same law to do a certain thing, or render a certain judgment, while appealing to the tribunal given him by the same authority, which declares the consequences of his act, the plaintiff says that the law shall not be enforced, the policy of the State shall not be carried out, because between the parties it would be unjust and unreasonable that the truth should be shown. Because I do not believe that such a construction of the statute is in accordance with its letter or spirit, I do most respectfully dissent from the foregoing opinion.