## Curtis & Co. *versus* Waring & Co.

C. & Co. agreed with. W. & Co. to consign oil to them, to be stored until they authorized its sale, with certain rates for storage and stipulated commissions.   They sold the oil without the order or knowledge of C. & Co., and afterwards went into bankruptcy and made a composition with their creditors.   C. & Co. brought an action of trover and conversion, but only one of the two defendants was served.   *Held*, that in the absence of affirmative evidence that the defendant in fact participated in the sale of the oil, or knowingly appropriated its proceeds, the court was right in holding that he was not guilty of positive fraud, involving moral turpitude or intentional wrong, and although fraud was implied against him because of the partnership relation, yet the action was barred by the composition in bankruptcy.

November 8th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1878, No. 266.

Trover and conversion, by Albert W. and I. A. Curtis, partners, against R. S. Waring and Orville T. Waring, doing business as Waring Brothers & Co.

The plaintiffs were engaged in the business of refining petroleum in Armstrong county, Pennsylvania, in August 1874.   Oil being very low in price, the plaintiffs concluded to put their oil up in good and secure barrels, store it, have it insured, and hold it until it would command a better price.   Waring Brothers & Co., of whom the defendant, Richard S. Waring, was one of the firm, were largely engaged in the oil business in Pittsburgh, Pennsylvania, and also had a branch.house in Philadelphia.   They stored, bought and sold oil.   The plaintiffs, in August 1874, called at the business house of the defendants in Pittsburgh, and made a contract with the defendants, as follows : The plaintiffs agreed to ship their oil to the defendants' warehouse in Philadelphia, and the defendants agreed to receive it, and store it, for the sum of eight cents per barrel for the first month, and four cents per barrel for each succeeding month.   It was also agreed that the plaintiffs should pay the defendants for keeping the barrels in order, cooperage as it is called.   The defendants were also to have the oil insured, at the cost of the plaintiffs.   It was further agreed

between them that the oil should be held until the plaintiffs ordered or desired it to be sold, and that when the plaintiffs authorized the sale of the oil, they would allow a commission of 1½ per cent.    It was further agreed between them that in case the plaintiffs needed any money before they wished to sell their oil, that the defendants (Warings) would loan them the same at 9 per cent.    On the 27th of August 1874, the plaintiffs commenced shipping oil by railroad to the defendants' warehouse at Philadelphia, and at various times until the 12th of October 1874, shipped to the defendants, under their contract, three thousand one hundred and sixty-seven barrels of refined oil in barrels.    This oil was worth in the aggregate about $18,000.

On the 25th of January 1875, one of the plaintiffs, learning that the defendants were in financial trouble, called at the defendants' business house in Pittsburgh, and there met the defendant, Richard S. Waring, and demanded from him the oil he had left with his house for storage, and was informed by Waring, in reply, that they had not the oil, that it had been sold, and that he had neither oil nor money for him.

The plaintiffs then brought this action.    Service was had on R. S. Waring alone, and a return of *non est inventus* as to O. T. Waring.

On the trial of the case below, the plaintiffs submitted evidence to the jury tending to prove substantially the facts as stated herein. The defendant also gave evidence to support his version of the transaction.

The defendant put in the plea, on his own behalf, that the plaintiff could not recover, for the reason that the defendant, after the transaction out of which the plaintiffs' cause of action grew, made a composition with his creditors, under the provisions of the Act of Congress of the 22d of June 1874.    His counsel also requested the court to charge the jury as follows:

That in view of the uncontradicted evidence, by means of the record of the United States District Court, that the defendant, after the transaction out of which the plaintiffs' cause of action grew, availed himself of the provisions of the bankrupt law, and effected a composition with his creditors in accordance with said provisions, such composition is, under all the evidence in the case, a bar to plaintiffs' action, and they should find a verdict for the defendant.

The plaintiffs' counsel objected to this instruction being given by the court, and claimed, that the evidence did not warrant the instruction prayed for in this point, even if a composition would bar a recovery by the plaintiffs growing out of the facts disclosed by the evidence, for the reason, that the defendant did not allege in his plea in this behalf, or prove or allege that he had paid or offered

to pay the composition proposed. That in a composition under the Act of Congress, of June 1874, the party proposing to avail himself of it as a defence to an action brought against him, must show payment or a tender of payment. That composition in bankruptcy is like accord and satisfaction. That compliance with the terms of the composition must both be alleged and proved to bar a recovery.

The plaintiffs claimed also that the instructions prayed for should not be given, for the reason that the liability of the defendant to the plaintiffs could not be discharged by any bankrupt proceeding, either by composition under the Act of 1874, or the provisions for composition under the Act of 1867. That it was not competent for Congress, under the constitutional provision to pass bankrupt laws, to enact a law to discharge a party from the consequences growing out of an actual fraud or crime, and that the proceedings in bankruptcy did not affect the liability of the defendant to the plaintiffs incurred in this transaction.

The court charged the jury amongst other things as follows: "The most important question, whether the discharge in bankruptcy is a bar to their action, can be reserved for consideration hereafter by the court in bankruptcy, and for that purpose I wish you to pass upon the question of fact in dispute between the parties." The court then left it to the jury to say whether the defendants received the plaintiffs' oil as mere storekeepers without any right to use or sell the same, or whether by the terms of the contract they had a right to use it and sell it, and then instructed them that if they found that the defendants sold the oil of the plaintiffs without authority and right, they should find for the plaintiffs; if they did not find so, but found that the defendants had a right to use or sell the oil, then they were to find for the defendants. Under this charge the jury found a verdict for the plaintiffs, reserving the question of law as to the effect of the composition proceedings upon the plaintiffs' claim, and the court subsequently entered judgment for the defendant, *non obstante veredicto*, and in this the plaintiffs claimed the court erred:

1. In not entering judgment in favor of the plaintiffs on the verdict found by the jury.

2. In entering judgment in favor of the defendants on the question of law, reserved by the court, *non obstante veredicto*.

3. In holding that the composition proceedings taken by the defendant in the United States District Court in bankruptcy, would effect a discharge of the defendant from his liability, without first showing that he had carried out the terms of the composition by satisfaction, according to its terms or his tender and offer of satisfaction.

4. In holding the law to be, that a liability incurred by the defendant under the facts found by the jury in this case, under the

[Curtis & Co. v. Waring & Co.]

instructions of the court, would be discharged by the proceedings in bankruptcy, to wit: by composition.

*Hampton & Dalzell* and *DeCamp*, for plaintiffs in error.—By their finding, the verdict of the jury established the fact, that the defendants, without color of right, took the property of plaintiffs and converted it to their own use. We contend, that upon this finding, the defendants' cannot be discharged from their liability to plaintiffs by any provisions of the bankrupt law providing for composition. In taking and converting our oil to their use, we maintain the defendants committed, both in law and fact, a positive and actual fraud, such as is contemplated by the bankrupt law.

We contend that the terms debtor and creditor, as used in the bankrupt law, and in all other laws relating to debtor and creditor, mean, and ought to be interpreted, an obligation arising from a contract, or out of the violation of a contract, either express or implied, and not the incurring of an obligation arising out of the commission of a crime or an actual fraud, as was the fact in this case. The obligation in this case to the plaintiff to create a debt, was never contemplated by the parties. It grew out of the wrong of the defendant.

Even if the proceedings under the Act of 1874, by the defendant in availing himself of the provisions of the act of composition, would avail him in a case like this one, to have the effect of discharging him from the obligations to his creditors, he should not only allege and plead his composition in bar of a recovery, but he should allege, plead and prove, that he had carried it out by payment of the consideration offered by him to his creditors.

*W. S. Purviance* and *George Shiras, Jr.*, for defendants in error.—The defendants were factors and were not acting in a "fiduciary character," within the meaning of the bankrupt law: Chapman *v.* Forsyth, 2 Howard 202; Neal *v.* Clark, 5 Otto 708. The debt created by the fraud of the bankrupt, must be one created by positive fraud, involving moral turpitude, and not implied fraud or fraud in law, which may exist without the imputation of wilful wrongdoing or criminal intent. The composition was effected in accordance with the provisions of the bankrupt law, and binds all creditors, and relieves the bankrupt from liability for all classes of debt: In re Keim *v.* Graff & Co., 17 N. B. Reg. 319; In re Schafer & Wesselhorft, Id. 116; In re Odell, 16 Id. 501; In re Haskell, 11 Id. 164; In re Morris, 12 Id. 170; Bamburg et al. *v.* Stern, 18 Id. 74.

The composition annuls the original debt and substitutes the pro rata, and this pro rata can only be enforced in the bankruptcy court. If, on motion to enforce it, the debtor could satisfy the court that he was not able to perform, the court should and

would set aside the composition, and the bankruptcy proceedings would then be resumed.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

This action was brought for damages for the conversion of oil by Richard S. and Orville T. Waring, late co-partners as Waring Brothers & Co., the summons served on Richard S., and the cause tried against him alone. The verdict established the fact that the plaintiffs' "oil was shipped to the Philadelphia house, to be there kept in store for them, without any right, on the part of Waring Brothers & Co., to sell or use the same, but simply keep it on storage until the plaintiffs should order it to be sold." No other disputed fact was passed on by the jury, save the amount of damages. The verdict was rendered subject to the opinion of the court on points reserved, to wit: 1. Whether the composition of the defendant with his creditors, in accordance with the provisions of the bankrupt law, is, under all the evidence in the case, a bar to the plaintiffs' action; and 2. Whether the plaintiffs' evidence shows that the defendant was guilty of fraud, or was acting in a fiduciary relation, within the meaning of the bankrupt law.

The third assignment of error cannot be sustained. It was unnecessary for the defendant to prove that he had performed or tendered performance of the terms of the composition. For reasons stated in Bidwell *v.* Bidwell, *ante,* p. 61, while the decree of the District Court of the United States stands, or while the proceeding in bankruptcy is pending in that court, the courts of the state have no jurisdiction of an action for recovery of the original debt, if such debt be not within the 33d section of the Act of 1867. It was not there determined whether a debt created by fraud of the bankrupt, or while acting in a fiduciary character, is discharged by a composition; nor need it be here. This question is not raised in the facts presented.

The plaintiffs contend they are entitled to recover under the principle held in Leggett *v.* Barton, 11 Vroom 83 (7 The Reporter 116). In that case the defendant pleaded his discharge by a composition in bankruptcy; the plaintiff replied that the debt was fraudulently contracted; to which replication the defendant demurred. The pleadings admitted the debt was fraudulently contracted, and therefore the point was, whether it, like other debts, was discharged by the composition. Here the fraud is denied, and a reserved question whether there is evidence to show it.

From the plaintiffs' testimony, it appears they agreed with Waring Brothers & Co. to ship oil to them at Philadelphia, to be there stored until they authorized its sale, at certain rates per month for storage, and stipulated commissions on sales; and Waring Brothers & Co. to make advances, pay cooperage, insu-

rance, and expenses of mixing oils. This contract was made with R. S. Waring, who did the firm business at Pittsburgh; the oil was shipped, from August 27th to October 12th 1874, to Philadelphia, where Orville T. Waring had charge of the business. In January 1875, having heard that the credit of Waring Brothers & Co. was shaking, the plaintiffs called on R. S. Waring at Pittsburgh for the oil, who said it had been sold and he was sorry for it, that he regretted it, and could not give the oil or money. Before the failure the plaintiffs borrowed from Waring Brothers & Co. $1500, and gave orders for $2600, got under the arrangement for advances on security of the oil.

All through their argument the plaintiffs urged that R. S. Waring, the defendant, took and sold the oil and appropriated the proceeds to his own use, without color of right, and that such is the true interpretation of the verdict. It was not submitted to the jury to find whether R. S. Waring, in fact, participated in the sale of the oil, or wittingly shared its proceeds, or even had knowledge of its sale before the failure of the firm. He was in Pittsburgh, his partner in Philadelphia, when the oil was sold, and there is no pretence of proof that he directed the sale. No exception was taken to the reservation in the second point, nor is error assigned to the disposition of fact therein. The fourth assignment alleges error in law, under the facts found by the jury. What they found is already noted, and is to the effect only that R. S. Waring, as a copartner, is liable in trover for conversion of the oil.

A man may intend no wrong and yet be liable in trover for the value of property he took by mistake: Forsyth *v.* Wells, 5 Wright 291. The conversion by one partner of property, which came into possession of the firm or partnership account, is the conversion of all, and makes all liable in trover: Nisbet *v.* Patton, 4 Rawle 120. In that case Gibson, C. J., cites a number of instances where trover was held to lie against innocent partners. The mere fact of a verdict against the defendant, with a reservation for the court to say if there is evidence of fraud, signifies nothing as to his guilt of actual fraud—that is not found.

The oil was consigned to Waring Brothers & Co., as factors, and they had a special property in it, a lien on it for their commissions, charges and advances; and this notwithstanding the oil was not to be sold until a time to be named by the consignors. Under the Bankrupt Act of 1841, a factor who received and retained the money of his principal, was not a fiduciary debtor. That act intended technical trusts and not those which the law implies from the contract: Chapman *v.* Forsyth, 2 How. 202. For reasons by Wells, J., in Cronan *v.* Cotting, 104 Mass. 245, we adopt the conclusion that the phrase "while acting in any fiduciary character," in the Act of 1867, must have the construction which the Supreme

Court of the United States had put on the similar clause in the Bankrupt Act of 1841.

In Neal v. Clark, 5 Otto 704, where it was held by the state court that Neal was not chargeable with actual fraud, but had committed constructive fraud, which implicated him in the *devastavit*, the Supreme Court of the United States ruled, " That the term fraud as used in section 5117 of the Revised Statutes, section 33 of the Bankrupt Act of 1867, means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without imputation of bad faith or immorality.

Whatever view may be taken of the act of him who actually converted the plaintiffs' oil, in absence of affirmative evidence that his partner, R. S. Waring, in fact participated in the sale, or knowingly appropriated its proceeds, the court was right in holding that he was not guilty of positive fraud, involving moral turpitude or intentional wrong; and though fraud was implied against him because of the partnership relation, yet the action was barred by the composition in bankruptcy.

Judgment affirmed.